EDWARD W. CURTISS *vs.* INHABITANTS OF SHEFFIELD & another.
SAME *vs.* SAME.

Berkshire.　October 3, 1912. — January 6, 1913.

Present: RUGG, C. J., HAMMOND, BRALEY, & DE COURCY, JJ.

*Tax,* Lien, Assessment. *Joint Tenants and Tenants in Common. Equity Jurisdiction,* To set aside tax deed. *Equity Pleading and Practice,* Decree.

Review by HAMMOND, J., of legislation in the Province and the Commonwealth in regard to tax liens.

Where land is owned by tenants in common the assessment of a tax upon the undivided interest of one of the tenants in common is invalid.

In a suit in equity by a tenant in common of certain land to set aside a tax deed of the land on the ground that the taxes, for the non-payment of which the land was sold, were invalid because they were assessed severally upon the undivided interests of the tenants in common, where it appeared that this erroneous method of assessment was adopted at the request of the plaintiff and his cotenants and that after the error was discovered the land was reassessed properly, it was *held,* that, if the plaintiff within a time named should pay the taxes thus properly reassessed, the tax deed should be declared void; otherwise, that the bill should be dismissed.

TWO BILLS IN EQUITY, filed on June 27, 1910, to set aside tax deeds of two parcels of land in Sheffield in which the plaintiff owned an undivided seven ninths interest, alleging that such deeds were void by reason of the invalidity of the assessment of the taxes for the years 1904 and 1905, for the non-payment of which the tax sales were made.

The cases were referred to Sanborn Gove Tenney, Esquire, as master, and afterwards were heard on the plaintiff's exceptions to the master's report by *Irwin,* J., who in each of the cases made a decree overruling the exceptions to the master's report and ordering that the bill be dismissed. The plaintiff appealed.

The cases were submitted on briefs.

*E. W. Curtiss, pro se.*

*H. M. Whiting,* for the defendants.

HAMMOND, J. The general findings of the master that none of the taxes have been paid and that no tender of the amounts due has been made are justified by the subsidiary findings set out in the report, and must stand. So far therefore as the plaintiff relies upon payment or tender he fails.

He contends, however, that the deeds are void by reason of irregularities in the proceedings of assessment and sale; and in support of this contention he alleges that the assessments made upon the two lots named in the bill in the first case were illegal because, the lots being owned by tenants in common, the tenants were assessed each for his own individual interest therein, whereas, as the plaintiff says, they should have been jointly assessed for the whole.

We will first consider this objection so far as respects the taxes for the year 1905. It appears that on May 1 of that year the first of these two lots was owned by the plaintiff and his two children as tenants in common, he owning seven ninths and his children

each one ninth. This lot was known on the assessors' books as the "milling property" and consisted of about one acre of land with the buildings thereon, the whole being valued by the assessors at $3,750. It was originally assessed two thirds to the plaintiff and one third to each of the children, but, the assessors apparently having discovered the error as to fractions, a reassessment was made changing the figures so as to conform to the actual state of the title. Upon the books of the assessors the entries were made in the following way:

"Curtiss, Edward W.   7/9 [Description of the property] — $2916.   Tax $47.53.

"Curtiss, Irving M.   1/9 [Description of the property] — $417.   Tax $6.79.

"Carson, Mrs. Margaret.   1/9 [Description of the property] — $417.   Tax $6.79."

It thus appears that the assessment was not of the whole tax upon the whole land to the tenants jointly, but an assessment to each tenant upon his undivided interest in the land for his proportionate part of the tax upon the whole land. The case seems to raise the general question whether an assessment to a tenant in common for his undivided interest in land is authorized under our system of taxation. There can be no doubt that it is within the power of the Legislature to authorize such an assessment. The only question is whether it has done so. It is merely a question of statutory construction, but, nevertheless, is one of considerable difficulty.

Not much light is thrown upon it by those portions of the colonial and provincial statutes which directly prescribe the manner of assessment. They provide in general terms that each inhabitant shall be assessed in just proportion according to his estate both real and personal, and that the amount of his tax shall be clearly set forth, but with reference to the question under discussion the language is vague and indefinite. See, for example, Anc. Chart. 69, 249, and the several provincial annual tax acts of which Prov. St. 1738–39, c. 13, 2 Prov. Laws, (State ed.) 952, is a fair sample. Perhaps the most that can be said of the provisions contained in these statutes as to the manner in which the assessments shall be made and recorded is that they are not conclusive either way on the question. And, speaking

generally, it may be said that none of our statutes, past or present, whether colonial, provincial or State, contains any direct provision as to the manner of assessing real estate owned in fee by tenants in common. None expressly directs either that the assessment shall be made to the tenants each for his own undivided interest, or to the tenants jointly for the whole. And while some of the provisions seem to point to the first, others seem to point to the second, as the proper method; and taken as a whole they are not absolutely inconsistent with either view. Hence if the decision of this question depended entirely upon these provisions as to the manner of assessment, it would be difficult to say that an assessment to a tenant in common upon his undivided interest is unauthorized.

But these provisions for the making and recording of assessments do not constitute the whole of our system of taxation. There are also provisions for the collection of the taxes. And these two sets of provisions, the one for assessing and the other for collecting, constitute the whole system, each set being essential. By comparing these two and studying them in their relation to each other and to the whole system, doubts as to the meaning of the one may be resolved by the plain legal meaning of the other. Where practicable, each set should be so interpreted as not to clash with the efficient action of the other, to the end that there may be harmony in the working of the whole and that taxes may be not only assessed but also collected.

In this Commonwealth there never has been a lien upon any article of personal property for the tax assessed therefor, no matter how large or cumbersome the article might be. The only method of collecting a tax upon personalty is by distress, arrest or action at law. It is otherwise as to a tax on real estate. In addition to these three remedies there is a process *in rem* for the collection of such a tax. A tax upon real estate may be assessed to the owner or occupant, and even when assessed to the latter it is a lien upon the whole land irrespective of the various interests of the owners or of lienors of any kind; and this lien may be enforced by a taking or sale. R. L. c. 13, §§ 35 *et seq.*

It becomes necessary to examine into the history of the legislation as to tax liens. The Prov. St. 1731–32, c. 9; 2 Prov. Laws, (State ed.) 616, seems to have been the earliest statute giving a

lien for taxes upon real estate. It was applicable only to unimproved lands of non-residents. It provided that if the tax was not paid three freeholders, to be appointed by the assessors, should "apprize so much of such . . . lands . . . as they judge will be sufficient to pay and satisfy" the taxes and charges, and that, the default continuing, the part thus apprized should be sold, and a deed thereof be given to the highest bidder. If the part apprized sold for more than enough to discharge the tax and charges, the surplus was to be paid to the "delinquent proprietors." See also Prov. St. 1735–36, c. 6, § 1, 2 Prov. Laws, (State ed.) 759, where only "so much and no more" of the land as the assessors should judge sufficient to pay the tax and charges should be offered for sale. See also to the same effect Prov. Sts. 1745–46, c. 9, § 1, 3 Prov. Laws, (State ed.) 251; 1752–53, c. 17, 3 Prov. Laws, (State ed.) 646; 1761–62, c. 44, § 1, 4 Prov. Laws, (State ed.) 532; 1777–78, c. 13, § 5, 5 Prov. Laws, (State ed.) 757. In this last statute the language is that the collector shall "sell so much only" of the land "as will be sufficient to discharge" the tax and charges. And the same language is employed in the following statutes, namely: Prov. Sts. 1777–78, c. 26, § 4, 5 Prov. Laws, (State ed.) 793; 1779–80, c. 12, § 5, 5 Prov. Laws, (State ed.) 1111; 1779–80, c. 30, § 5, 5 Prov. Laws, (State ed.) 1164; 1779–80, c. 49, § 5, 5 Prov. Laws, (State ed.) 1228; 1780, c. 9, § 6, 5 Prov. Laws, (State ed.) 1407, 1408; 1780, c. 16, § 5, 5 Prov. Laws, (State ed.) 1431; and St. 1785, c. 70, § 7.

St. 1785, c. 70, § 6, extended the lien to the case where the landowner removed out of town after the tax was assessed. In such a case the collector was to sell "so much of the said land" as would suffice to pay the tax and charges. In § 7 the lien was extended to embrace the case of improved land of persons living out of the State, the lien to be enforced in the same manner. In this last class of cases, namely, where the landowner lived out of the State, it was early held that the tax was a lien on the land only and was not a personal charge. *Rising* v. *Granger,* 1 Mass. 47.

There were no other provisions for a lien for taxes upon real estate until the annual tax act of 1822, usually cited as St. 1821, c. 107. This applied only to taxes on real estate situated in Boston, and provided that if the tax was not paid the collector should sell "so much of the same" as should be necessary to discharge the

tax and charges. The same provision was continued in the following year by St. 1822, c. 108, § 9 (February 11, 1823), and by St. 1823, c. 133, § 9 (February 21, 1824), the lien was made general throughout the Commonwealth, and with modifications not here material the lien has ever since existed. St. 1830, c. 151, § 8 (February 28, 1831). Rev. Sts. c. 8, § 18. Gen. Sts. c. 12, §§ 22, 23. Pub. Sts. c. 12, §§ 24, 25. R. L. c. 13, § 35. St. 1909, c. 490, Part II, § 36.

At the time these various liens were established and until the Revised Statutes went into effect, the only way of enforcement was by a sale of so much of the land as was considered sufficient to discharge the tax and charges. It is manifest that by the term " land " as used in this connection is meant the actual physical object, and not an undivided interest therein. Accordingly it was held in *Wall* v. *Wall*, 124 Mass. 65, that the collector could not sell an undivided portion "so as to constitute the purchaser a tenant in common with the owner."

It is familiar law that a conveyance whether in fee, in mortgage or by lease, by a tenant in common of his undivided interest in a specific part of the land held in common is invalid as against his cotenants without their consent. See *Peabody* v. *Minot*, 24 Pick. 329, and *Marks* v. *Sewall*, 120 Mass. 174, and cases cited. And a levy of execution upon the undivided interest of a tenant in common in a specific part of the land is invalid. *Blossom* v. *Brightman*, 21 Pick. 283.

The tax lien must be commensurate with the tax; it covers the thing for which the tax is assessed and it covers nothing else. In the case of land owned by tenants in common, if the tax for the whole is assessed to the tenants jointly then the lien is entire for the whole tax and covers the whole land; if each owner is assessed only upon his undivided interest then the lien, if it exists at all, is not upon the whole land but only upon that undivided interest, and there are as many liens as there are tenants in common, each lien being complete in itself and independent of the others.

At the time the act establishing a lien for all taxes upon real estate was passed (St. 1823, c. 133), the provisions for the enforcement of the lien were inapplicable in the case of a tax upon an undivided interest in the land. The law above stated as to the levy of an execution upon the interest of a tenant in common in

a specific part of the land held in common was applicable to the enforcement of a lien for taxes. In neither case could such an interest be taken or sold. Only where the tax upon the whole land was assessed to the tenants jointly could the lien be enforced.

Taxes are essential to the efficient action of government, nay, even to its existence, and the provisions enacted for their collection should be so construed as to reach the end desired and not to furnish to the taxpayer any easy way of evasion or escape, to the end not only that taxes may be assessed, but, what is more important, that they may be collected.

Tenancy in common is not unusual. It is not to be presumed that the law making power, when it established this lien for all taxes upon real estate, supposed or intended that the lien should not extend to land so held, or that there were two methods of assessing taxes upon the owners of such land, the one resulting in an enforceable lien, the other in one non-enforceable. Rather is it to be presumed that the only system of assessment authorized was such as always to result in an enforceable lien. Such an interpretation of the provisions for assessment creates harmony in the whole system of taxation and results in an enforceable lien in all cases; while any other interpretation would create discord and would result in a non-enforceable lien in many cases. We are therefore of opinion that at the time of the establishment of the lien for all taxes upon real estate there was no authority for the assessment of taxes upon the undivided interest of a tenant in common.

And although several changes have been since made in the method of enforcing the lien (see Rev. Sts. c. 8, §§ 28, 29; Gen. Sts. c. 12, § 33; Pub. Sts. c. 12, § 35; St. 1900, c. 376; R. L. c. 13, §§ 41, 53 *et seq.*; St. 1909, c. 490, Part II, §§ 42 *et seq.*), there is nothing in them indicating a change in the nature or scope of the lien. Nor has there been any change in the method of assessment leading to any different result. R. L. c. 13, § 56, simply authorizes the assessment of the whole tax on land owned by tenants in common to one of the tenants, and when so assessed, the lien as a whole is enforced upon the whole land. It has no application where the tenant in common is assessed only for his undivided interest. The law with respect to the question under discussion continues as before. A tax to a tenant in common for only his undivided interest is invalid. See in this connection *Howard* v.

*Proctor,* 7 Gray, 128, 132; also, for a sketch of the legislation as to tax liens, the opinion of Holmes, J., in *Richardson* v. *Boston,* 148 Mass. 508. For decisions based upon the statutes of other States, some one way and some the other, see *Ronkendorff* v. *Taylor's lessee,* 4 Pet. 349; *Payne* v. *Danley,* 18 Ark. 441; *Hubbard* v. *Winsor,* 15 Mich. 146; *Russell* v. *Lang,* 50 La. Ann. 36; *State* v. *Rand,* 39 Minn. 502; *Corbin* v. *Inslee,* 24 Kans. 154, and the cases cited in 37 Cyc. 1006, note 5.

It appears in the present case that although the tax was expressly assessed to the tenants in common, each his proportionate share thereof and upon his own undivided interest in the land, yet the proceedings for the enforcement of the lien went upon the theory that the lien was entire upon the whole land, as though the whole tax had been assessed to the tenants jointly. The amount of the tax stated in the advertisement and also in the deed as due and unpaid was $68.11, which is the exact total of the sums separately assessed, and the proceedings were as if the lien was entire for that sum total upon the whole. In a word the proceedings were conducted as they would have been if the tax had been correctly assessed.

In view of these facts it is contended by the defendants that the only inaccuracy in the whole proceedings from beginning to end was in the method of assessment, and that as that occurred at the request of the plaintiff and his cotenants he ought not to be allowed to avail himself of it to avoid the payment of taxes justly due from him. It might be that this rule would be applicable in proceedings by way of distress, arrest or action at law against either tenant to collect of him only the tax assessed to him (*Burr* v. *Wilcox,* 13 Allen, 269), but neither tenant even then could be held for the tax assessed upon his cotenants. And in the same way the remedy by lien is no broader than the tax assessed. The tax being upon a part the lien cannot be upon the whole. In the present case it is not strictly accurate to say that the only trouble is with the assessment. There is another trouble arising later, resulting, it is true, in some respects from the first, but entirely distinct from it, namely, the lack of commensuration between the undivided interest for which the tax was assessed and the whole land upon which the collector has attempted to enforce the lien. The principle invoked is not applicable.

It follows that the deed of the lot in question, for the non-pay-

ment of the taxes of 1905, is invalid. For the same reason all the deeds of the lots named in the first bill for non-payment of taxes of 1904 or 1905 are invalid.

It is unnecessary to consider in detail the plaintiff's exceptions to the master's report. Some of them are immaterial. Some ask for findings of facts upon evidence the whole of which is not before us. As to the rest it is sufficient to say that so far as they are consistent with this opinion they are sustained, and so far as inconsistent with it they are overruled.

The plaintiff is entitled in the first case to equitable relief upon certain conditions. He who seeks equity must do equity. The error occurred at the special request of the plaintiff and his co-tenants. The taxes have not been paid. They have been properly reassessed, and so far as appears by this record are a lien upon the land. Under these circumstances the decree should be that if within thirty days from the entry of the rescript the plaintiff pays the taxes for the years 1904 and 1905 as reassessed in 1909, with interest thereon from the time of such reassessment, then the deeds shall be declared null and void; otherwise that the bill shall be dismissed. Neither party to have costs in any event. And it is

*So ordered.*

In the second case there appears to be no trouble, at least with the deed of Benjamin, collector for the year 1905. The plaintiff shows no ground for relief in equity. The decree should be: Bill dismissed with costs.

*So ordered.*