In re Armando BUSONE, d/b/a Armando P. Busone Painting, Debtor.

Bankruptcy No. 086–60257–21.

United States Bankruptcy Court
E.D. New York.

March 6, 1987.

Gary Fischoff, Garden City, N.Y., for debtor.

Martin Bradley Ashare, Suffolk Co. Atty., by Patrick J. Barton, Bureau Chief, Hauppauge, N.Y.

Stuart P. Gelberg, Garden City, N.Y., trustee.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

The Suffolk County Treasurer ("Suffolk Treasurer"), a statutory lien creditor, opposes confirmation of the debtor's amended plan on the following grounds:

(1) the debtor proposes to pay 10% interest on the property taxes now in arrears, which he is paying out over the life of the plan; the Suffolk Treasurer contends that 11 U.S.C. § 506(b) requires payment at 12%, the rate specified in the Suffolk County Tax Act ("SCTA"). 12 N.Y. Law Ch. 311 (as amended).

(2) the debtor's plan does not cover taxes which will become due during the life of the plan. The Suffolk Treasurer argues that § 1305 of the Code requires the debtor's plan to include payment to the Chapter 13 trustee of amounts sufficient to cover these post-petition property taxes.

The debtor and the Chapter 13 trustee disagree with the Suffolk Treasurer: their position is that the interest rate under the plan on pre-petition arrears satisfies § 1325(a) and, therefore, the plan qualifies for confirmation; they further contend that the plan need not cover post-petition taxes.

The question as to the proper interest rate to be incorporated in a Chapter 13 plan to cover unpaid Suffolk real estate taxes is recurrent in this Court. It affects many other debtors in addition to the parties here involved.[1]

The critical facts are few:

1. On April 14, 1986, the debtor filed a petition for relief under Chapter 13. The debtor's petition listed $7,533.42 as owed on unpaid real property taxes, which had become a lien against the property under the SCTA.

2. The debtor's real property has a value in excess of the taxes owed.

---

1. E.g., *In re Gibbons,* Case No. 086–60358–21, in which the same issue is *sub judice. See also, In re Levitt House, Inc.,* 72 B.R. 18 (Bankr. E.D.N.Y.1987).

3. On August 22, 1986, the Suffolk Treasurer filed a claim for unpaid real estate taxes, describing its claim as "a secured claim with priority in the amount of $7,533.43, and increasing."

4. The debtor's amended plan, insofar as relevant, provides:

full payment in deferred cash payments of all claims entitled to priority under 11 U.S.C. Section 507 ... I.R.S., New York State and Suffolk County to receive 100% plus 10% interest.

## DISCUSSION

### I

With respect to the first issue raised by the Suffolk Treasurer, the rate of interest to be paid on the tax arrearages to be satisfied under the plan, the relevant provision of the Code is § 1325(a)(5)(B)(ii), not § 506(b). The two sections are not in conflict, but complementary. Section 506(b) determines the exact amount of the allowed secured claim of the Suffolk Treasurer. Section 1325(a)(5)(B)(ii) requires that the plan payments return the *present value* of that figure to the creditor. An interest figure enters into both determinations. Although the two figures, the interest rate to be used in computing the allowed amount of the claim and the discount figure to be used to calculate present value, may coincide (and Congress apparently assumed they would[2]), they are arrived at by two very different routes.[3]

Section 506(b) states, in relevant part: To the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

■ Section 506(b) carves out an exception to the flat prohibition in § 502 against any post-petition interest. 3 Collier on

Bankruptcy, ¶ 506.05 at pp. 506–38–506–41 (15 Ed.1986). Although the question is still not entirely free from doubt, the current weight of authority is to the effect that § 506(b) authorizes the allowance of postpetition interest to all over-secured creditors, regardless of whether the creditor's lien arises from an agreement or, as in the present case, by operation of the statute. The Court of Appeals for the Fourth Circuit so held in *Best Repair Co., Inc. v. United States*, 789 F.2d 1080 (4th Cir.1986), and most bankruptcy courts have concluded this issue in concordance with the result reached by the Fourth Circuit. *See, In re Morrissey*, 37 B.R. 571 (Bankr.E.D.Va. 1984); *In re Henzler Manufacturing Co.*, 55 B.R. 194 (Bankr.N.D.Ohio 1985); *In re Loveridge Machine & Tool Co. Inc.*, 36 B.R. 159 (Bankr.D.Utah 1983); *accord, Cardinal Federal Savings & Loan Ass'n. v. Colegrove*, 771 F.2d 119 (6th Cir.1985); *In re Hoffman*, 28 B.R. 503 (Bankr.Md. 1983). *Contra, In re Churchfield*, 62 B.R. 399 (Bankr.E.D.Mich.1986); *In re Dan-Ver Enterprises, Inc.*, 60 B.R. 568 (Bankr.W.D. Pa.1986).

The question as to whether interest is allowable absent an agreement so providing turns to whether the restriction at the end of § 506(b), allowing what is "provided for under the agreement," applies to interest or only to reasonable fees, costs and charges. In *Best Repair, supra*, the Fourth Circuit analyzed the statute as follows:

"There shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." The phrase "interest on such claim" is set off by commas, and the following phrase is introduced by "and any." The effect of this usage is to make "interest on such claim" a separate and distinct clause to which "provided for under the agreement" does not apply.... Though Congress could have more clearly separated

---

**2.** House Rep. No. 95–595, 95th Cong., 1st Sess. at p. 352–53 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787, discussed in *In re Klein*, 10 B.R. 657, 661–62 (Bankr.E.D.N.Y.1981).

**3.** *See* cases cited 3 Collier on Bankruptcy, ¶ 506.05, n. 16 at p. 506–45 (15 Ed.1986).

the interest clause, we think that the natural meaning of its chosen words is to permit post-petition interest on nonconsensual oversecured claims.

*Best Repair Co., Inc. v. United States*, 789 F.2d at 1082 (footnotes omitted).

While not all courts are in agreement with this analysis,[4] Bankruptcy Judge Schwartzberg of the Southern District of New York, following *Best Repair*, allowed an oversecured creditor interest on its insurance and tax advances even though such interest was not provided for in the agreement under which the claim arose. *In re Maldonado*, 62 B.R. 594 (Bankr.S.D.N.Y.1986). This holding throws into question his earlier decision that a statutory creditor, even if oversecured, cannot be allowed interest under § 506 because no agreement provides therefor. *In re Venable*, 48 B.R. 853, 855 (S.D.N.Y.1985).

■ What *Best Repair* and similar cases settle is that nonconsensual liens, like consensual liens, are entitled to post-petition interest up to the point of allowance. On a consensual lien, the appropriate rate of post-petition interest is that contained in the agreement. *In re Maldonado, supra*, 62 B.R. at 597; *In re Corliss*, 43 B.R. 176 (Bankr.D.Ore.1984). On a statutory lien, it is the rate contained in the statute that created the lien. *See, e.g., Henzler, supra*, 55 B.R. at 197; *In re Hoffman, supra*, 28 B.R. at 508.

The interest rate in the SCTA, which is the source of the lien of the Suffolk Treasurer, is 12%. This, therefore, is the interest rate that must be used in computing the amount of the secured claim of the Suffolk Treasurer. That claim is computed "as of the effective date of the plan." § 1325(a)(5)(B)(ii). Although neither the Code nor the legislative history define what is meant by "effective date," *In re Klein, supra*, 10 B.R. at 660, most courts evidentally utilize the date of the confirmation hearing. *See, Id.;* 5 Collier on Bankruptcy,

¶ 1325.06 at 1325–24 (15th Ed.1986). The secured claim of the County Treasurer shall, therefore, include post-petition interest of 12% on its tax claim, up until the date of the confirmation hearing.

■ The interest rate to be used in computing the allowed amount of the secured claim is not, however, necessarily the same as the discount factor to be used in computing payments under the plan that will return present value to the creditor. *In re Corliss, supra; In re Webb*, 29 B.R. 280, 286 (Bankr.E.D.N.Y.1983); *In re Klein, supra*, 10 B.R. at 661; *In re Hibbert*, 14 B.R. 891, 894 (Bankr.E.D.N.Y.1981); *In re Smith*, 4 B.R. 12 (Bankr.E.D.N.Y.1980).

What is meant by "present value" was well stated in *In re Fisher*, 29 B.R. 542, 543 (Bankr.D.Kan.1983):

"Present value" or the "time value of money" is not a legal concept, but rather it is a term of art in the financial community. It simply means that a dollar received today is worth more than a dollar to be received in the future. To compensate the creditor for not receiving its money today, the debtor is charged an additional amount of money. The charge is based on a rate of interest called a "discount rate." The discount rate is used to calculate how much the creditor should be paid so that it will have the same amount of money in the future as it would have had if it did not have to wait to be paid.

The discount factor must be high enough to return the "market rate" to the creditor for what is in effect a forced loan of the amount of the secured debt. *In re Wilkinson*, 33 B.R. 933, 935 (Bankr.S.D.N.Y.1983). *See also, In re Colegrove*, 771 F.2d at 123.

In a case involving a parallel Chapter 11 requirement, § 1129(a)(9)(C), and a Federal tax lien, the Court of Appeals for the Eighth Circuit rejected the Government's

---

**4.** In coming to a contrary conclusion, the Court in *In re Churchfield, supra*, 62 B.R. at 401, stated, "Not being an authority on English grammar and punctuation, we find that the words and punctuation of the statute are hopelessly ambiguous, and so move on to analyze their meaning through examination of legislative intent ..." So doing, the *Churchfield* Court finds no legislative intent to change the long standing pre-Code rule that a statutory lien carries no interest.

position, identical with that taken here by the Suffolk Treasurer, that the tax statute was controlling and instructed the Bankruptcy Court to determine the appropriate interest rate based on evidence as to the prevailing market rate on a comparable loan. *United States v. Neal Pharmacal Company*, 789 F.2d 1283 (8th Cir.1986). The Eighth Circuit said: "The language of section 1129(a)(9)(C) ... clearly compels us to conclude that the determination of what interest rate will provide the government with the present value of its claim must be made on a case by case basis." 789 F.2d at 1289.

To determine the prevailing market rate, the courts have used a wide variety of indices. *See, In re Venable*, 48 B.R. at 856. These include, *inter alia,* the contract rate of interest, the legal rate of interest, the rate of interest in the applicable tax law, the Treasury Bill rate and the treasury bill rate with adjustments.

Although no hearing was held in this matter respecting what is the market rate for money at the present time in Suffolk County, this Court in other Chapter 13 cases has been accepting 10% as appropriate. That figure exceeds both the current prime interest rate and the Treasury Bill rate.

If the Suffolk Treasurer wishes to have the hearing on its objections to confirmation reopened for the purpose of submitting evidence on the issue of what constitutes an appropriate market rate, the Court will reopen the proceeding. Otherwise, on the record now before it, the plan will be held to satisfy § 1325(a)(5)(B)(ii) and the objection, on the ground that it does not, is overruled.

## II

■ The fact that the payments to the Chapter 13 trustee under the debtor's plan do not cover the debtor's future real property taxes does not preclude confirmation.[5]

To qualify for confirmation, a plan need only satisfy the requirements of Sections 1322(a) and 1325, neither of which requires payment of tax liabilities not yet due. Such liabilities are the subject of § 1305 and § 1322(b)(6).

Under 1322(b)(6)[6], a debtor *may*, but need not, include in his plan provision for the payment of any such future tax liabilities as to which the taxing authority involved elects to file a claim under § 1305[7].

Section 1305(a)(1) creates a limited exception to the rule that a Chapter 13 plan may provide only for the payment of pre-petition claims. 5 Collier on Bankruptcy, ¶ 1305.01, at p. 1305–2 (15th Ed.). It permits a claim to be filed for taxes that become payable while a case is pending. The option to file and, thereby, to be paid under a plan lies with the taxing authority.[8]

The only circumstances in which the omission from a Chapter 13 plan of payments to cover post-petition taxes might lead to loss of confirmation would be if the taxing authority exercised its election, when the taxes became due, to file a claim

---

**5.** Requiring payment of future taxes through the Chapter 13 trustee could augment their cost to the debtor by the ten percent commission charged by the Chapter 13 trustee without benefit to the debtor or to the taxing authorities, which are as well, or better, served by prompt payment "outside" the plan.

**6.** Section 1322(b)(6) insofar as relevant reads: "... the plan may— ... (6) provide for the payment of any part of any claim allowed under § 1305 of this title."

**7.** Section 1305, insofar as relevant, reads:
(a) a proof of claim may be filed by any entity who holds a claim against the debtor—
(1) for taxes that become payable to a governmental unit while the case is pending;

(b) [A] claim filed under subsection (a) of this section shall be allowed or disallowed under § 502 of this title, but shall be determined as of the date such claim arises, and shall be allowed under § 502(a), 502(b), or 502(c) of this title, or disallowed under Section 502(d) or 502(e) of this title, the same as if such claim had arisen before the date of the filing of the petition.

**8.** As one authority has stated, "It is important to note ... that the Code does *not compel* the filing of these claims, but merely gives the creditor the option of filing. If the post-petition claim is not dealt with in the plan, the creditor may have to wait until the close of the case in order to recover payment." Weintraub & Resnick, Bankruptcy Law Manual, ¶ 9.09 (emphasis added).

for their payment and the debtor then failed to amend his plan to cover these newly filed claims. In that event, it appears the plan would no longer meet the requirements of the Code, since current taxes are administrative expenses (§ 503(b)(1)(B) and (C)) given priority by Section 507 and, as such, § 1322(a)(2) requires that a plan provide for their payment in full.

But in this case, no claim has been filed under Section 1305; the objecting creditor concedes that it is not eligible to file such a claim;[9] and it is doubtful whether any claim may be filed before it arises. A "claim" is defined in the Code as a "right to payment." § 101(4)(A). There is no right to payment until the taxes become due.

Therefore, in making no provision for paying his future taxes through the Chapter 13 trustee, the debtor did no more than exercise an option given him by § 1322(b)(6).

For the foregoing reasons, the objections to confirmation are overruled. Contingent upon the debtor amending his plan to include the 12% interest on the Suffolk Treasurer's secured claim from August 20, 1986 through October 23, 1986, the debtor's plan is confirmed.

So Ordered.

---

**9.** The County Treasurer's Brief to this Court reads: "While it must be conceded that since real estate taxes over the five years of the contemplated plan will initially be payable to the Town of Brookhaven Receiver of Taxes, a proof of claim cannot be filed by the Suffolk County Treasurer." Brief of Creditor-Objector, Suffolk County Treasurer, at p. 7 (November 28, 1986).