In re Bonnie D. BURRELL, Debtor.

Bonnie D. Burrell, Appellant,

v.

Town of Marion, Appellee.

BAP No. 05–064.
Bankruptcy No. 95–18620–WCH.
Adversary No. 03–14727–WCH.

United States Bankruptcy Appellate Panel
for the First Circuit.

July 17, 2006.

Ann Brennan, Esq., on brief and orally for Appellant.

Thomas P. Crotty, Esq. and Ellyn H. Hurd, Esq., on brief and Jonathan D. Witten, Esq. orally for Appellee.

Before LAMOUTTE, VAUGHN, and DEASY, United States Bankruptcy Appellate Panel Judges.

DEASY, Bankruptcy Judge.

Bonnie D. Burrell n/k/a Bonnie Burrell van Stephoudt (the "Debtor") appeals from orders of the United State Bankruptcy Court for the District of Massachusetts (the "bankruptcy court"), dated October 21, 2005, denying a motion for summary judgment filed by the Debtor and granting a cross-motion for summary judgment

filed by the Town of Marion (the "Town").[1] In ruling in favor of the Town, the bankruptcy court concluded that the Town acted properly in continuing to assert a lien and to seek payment of real estate taxes, water charges, and related interest charges on the Debtor's real estate. For the reasons set forth below, the orders of the bankruptcy court are VACATED and this matter is REMANDED for further proceedings consistent with this opinion.

### BACKGROUND

The Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code[2] on December 22, 1995. At the time she filed bankruptcy she co-owned real estate located at 659 Front Street in Marion, Massachusetts (the "Property"), with two other individuals, Robert P. Picariello ("Picariello") and Jean T. Turner ("Turner").[3] Neither Picariello nor Turner filed bankruptcy.

At the time the Debtor filed bankruptcy, the Debtor along with co-owners Picariello and Turner owed real estate taxes on the Property to the Town for tax years 1993, 1994, 1995, and the first half of 1996, and the Town had recorded an instrument of taking with respect to the Property for tax years 1993, 1994, and 1995. Also at the time the Debtor filed bankruptcy, the Debtor along with co-owners Picariello and Turner owed $4,179.82 in water charges for the Property to the Town.

On May 20, 1996, the Town filed a proof of claim indicating it held a secured claim in the amount of $17,226.06, representing real estate taxes, interest, demand, and other fees of $3,456.31 for tax year 1993, $3,375.53 for tax year 1994, $5,107.37 for tax year 1995, and $5,286.85 for tax year 1996. The Town's proof of claim did not include any interest for the period after May 15, 1996, and did not include significant charges for water.[4]

On March 3, 1997, the bankruptcy court confirmed the Debtor's amended Chapter 13 plan.[5] The confirmation order provided for payments to the Town totaling $17,226.02,[6] on account of a secured claim, to be paid over a sixty month period. The order further provided that "[s]ecured creditors shall retain their lien on their collateral unless otherwise provided in this order." Through a series of payments, the Chapter 13 trustee paid the Town $17,226.02, which monies the Town apparently applied to interest only, not to the prepetition taxes themselves. On December 10, 2001, the Debtor received a discharge.

1.  The Debtor also filed a motion for reconsideration of the bankruptcy court's orders on summary judgment, which motion the bankruptcy court denied. The Debtor's notice of appeal did not specifically state that the Debtor was appealing the denial of her motion for reconsideration. Accordingly, the Panel will not consider it.

2.  All references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. §§ 101–1330.

3.  The Debtor owned an 84% interest in the Property with Picariello as joint tenants. Turner owned the remaining 16% interest.

4.  The amount for tax year 1995 did include $94.40 for "water lien" despite the parties' representations that the proof of claim did not contain any claim for water charges.

5.  The Debtor's amended plan provided for payments totaling $17,266.02 to the Town on account of a *priority* claim, not a *secured* claim as set forth in the Town's proof of claim. As described *infra*, the Town held a secured claim.

6.  There is a four cent discrepancy between the proof of claim amount and the plan and confirmation order amounts.

During the course of the Debtor's bankruptcy and post-discharge, the Town continued to assess postpetition interest on the real estate taxes that were due prepetition. In addition, the Town continued to assess postpetition interest on the water bill that was due prepetition and placed a lien [7] on the Property on account of the unpaid water bill. On March 18, 2002, the Debtor recorded a deed, dated March 18, 1997, whereby Picariello deeded his interest in the Property to the Debtor subject to all applicable liens. By foreclosure deed dated December 10, 2002, the Debtor acquired Turner's interest in the Property subject to all applicable liens.

The Town continued to seek payment of postpetition interest on the real estate taxes that accrued prepetition, the prepetition water bill, and the postpetition interest on the prepetition water bill. [8] The Debtor filed an adversary proceeding against the Town in October 2003, seeking, among other relief, (a) a determination that the Debtor's obligations for postpetition interest on real estate taxes for tax years 1993, 1994, 1995, and the first half of 1996 were discharged; (b) a determination that the Debtor's obligation for prepetition water charges was discharged; (c) an order that the Town did not have an *in rem* claim for such obligations; (d) an order requiring the Town to release its liens related to such obligations; and (e) damages for the Town's alleged violation of the discharge injunction of § 542(a)(2) of the Bankruptcy Code.

The Debtor filed a motion seeking summary judgment in her favor in September 2005. At that time, the Town claimed the

Debtor owed a total of $54,644.03 as of September 20, 2005, for tax years 1993 through 1998 and 2003. [9] The Town filed a cross-motion seeking summary judgment in its favor in October 2005. The bankruptcy court held a hearing on the motions on October 21, 2005. Ruling from the bench, the bankruptcy court denied the Debtor's motion and granted the Town's cross-motion. The Debtor's appeal ensued.

On March 20, 2006, the Debtor paid, under protest, all amounts the Town claimed were outstanding with respect to the Property so that she could refinance the Property. The Town executed an instrument of redemption on April 5, 2006. The Debtor is pursuing an abatement and refund of monies paid to the Town in accordance with Massachusetts state law.

### *JURISDICTION*

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3)]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An interlocutory order " 'only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the

---

**7.** See discussion *infra* regarding liens for water charges under Massachusetts state law.

**8.** In addition, it appears that postpetition real estate taxes and water charges for tax years 1997, 1998, and 2003 also remained outstanding.

**9.** Presumably this amount included real estate taxes, water charges, and interest, both prepetition and postpetition.

merits.' " *Id.* (quoting *In re Am. Colonial Broad. Corp.,* 758 F.2d 794, 801 (1st Cir. 1985)). A bankruptcy appellate panel is duty-bound to determine its jurisdiction before proceeding to the merits even if not raised by the litigants. *See In re George E. Bumpus, Jr. Constr. Co.,* 226 B.R. 724 (1st Cir. BAP 1998). An order granting a motion for summary judgment is a final order that ends the litigation on the merits of the complaint. *See Ragosa v. Canzano (In re Colarusso),* 295 B.R. 166, 171 (1st Cir. BAP 2003) (recognizing that an order denying a motion for summary judgment that also grants an opposing party's cross-motion for summary judgment is a final order because it ends litigation on the merits), *aff'd,* 382 F.3d 51 (1st Cir.2004); *Weiss v. Blue Cross/Blue Shield of Delaware,* 206 B.R. 622, 623 (1st Cir. BAP 1997).

■ At oral argument, when it came to the Panel's attention that the Debtor had recently paid all amounts the Town claimed were outstanding with respect to the Property, the Panel requested that the parties file pleadings to address the impact of such payment on the Debtor's appeal. The Town has suggested that the bankruptcy court and the Panel lack jurisdiction to determine whether the Debtor has made an overpayment to the Town. According to the Town, § 505(a)(2)(B) of the Bankruptcy Code precludes the bankruptcy court and the Panel from making any determination as to whether the Debtor is entitled to a tax refund because the Debtor has not yet "properly requested" such refund in accordance with Massachusetts state law. In support of its position, the Town cites *In re St. John's Nursing Home, Inc.,* 154 B.R. 117 (Bankr.D.Mass. 1993), *aff'd, St. John's Nursing Home, Inc. v. City of New Bedford,* 169 B.R. 795 (D.Mass.1994), wherein the bankruptcy court concluded that the trustee had failed to properly request a refund of postpetition real estate taxes by filing a timely abatement application in accordance with Massachusetts law and therefore the dispute could not be resolved by the bankruptcy court and, even if the court could have decided the dispute, abstention would have been appropriate. The Debtor is pursuing a refund in accordance with Massachusetts state law within the time permitted by state statute. The Debtor does not believe that her recent payment of the Town's taxes affects the Panel's ability to render a decision on the Debtor's appeal.

After considering the matter, the Panel concludes that the Debtor's payment does not moot the appeal and does not divest the bankruptcy court or the Panel of jurisdiction over this proceeding. Unlike the *St. John's Nursing Home* case, the Debtor is not seeking a determination from the bankruptcy court or the Panel that the Debtor is entitled to a tax refund under Massachusetts law. Rather, the Debtor's adversary complaint sought a determination as to whether the Debtor's plan payments were properly applied toward the Town's allowed claim in accordance with both the Debtor's bankruptcy plan and the bankruptcy court's confirmation order and whether the Town's lien on the property survived the Debtor's discharge. Such a determination is not an action under § 505 of the Bankruptcy Code. Accordingly, the Panel has jurisdiction to consider the Debtor's appeal.

### STANDARD OF REVIEW

■ Appellate courts generally apply the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law. *See TI Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.),* 43 F.3d 714, 719–20 n. 8 (1st Cir.1994). A bank-

ruptcy court's determination that a defendant is entitled to summary judgment is a legal conclusion subject to *de novo* review. *See Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 66 (1st Cir.2004); *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir.1994).

## DISCUSSION

### I. The Bankruptcy Court's Ruling

The ultimate issue before the Panel is whether the bankruptcy court erred in denying the Debtor's motion for summary judgment and granting the Town's cross-motion for summary judgment. In ruling on the motions, the bankruptcy court made no specific finding that no genuine issues as to any material facts existed. Apparently, the bankruptcy court concluded that there were no material factual disputes because it made legal conclusions that the Debtor's prepetition obligations to the Town were discharged and the Town could enforce its lien on the Property as to the co-owners of the Property to whose rights the Debtor ultimately succeeded postpetition. The bankruptcy court made no explicit rulings, however, regarding (1) whether the Town's postpetition interest on prepetition real estate taxes, which was not included in the Town's proof of claim, was discharged in the Debtor's Chapter 13 bankruptcy; (2) whether the Town's prepetition water bill and the postpetition interest on that water bill, which were not included in the Town's proof of claim, were discharged in the Debtor's Chapter 13 bankruptcy; and (3) whether the Town should be required to prepare an accounting that would indicate how postpetition payments, including those made by the Chapter 13 trustee, for real estate taxes and water bills were applied. Rather, the

bankruptcy court simply granted the Town's cross-motion in which the Town had requested judgment in its favor and dismissal of the adversary proceeding or, in the alternative, an order requiring the Town to amend its lien on the Property to retroactively cover only fifty-eight percent of the Property. It appears that in the bankruptcy court's view, interest continued to accrue on the prepetition obligations at least as to the co-owners and, therefore, the Town acted appropriately in maintaining its prepetition lien on the Property and in demanding payment for the prepetition water bill and postpetition interest from the co-owners and then the Debtor upon her acquiring each co-owner's interest.

### II. The Town's Claim

The Town filed a proof of claim asserting it was owed $17,226.06, representing real estate taxes, interest through the date of the proof of claim, demand, and other fees for tax years 1993, 1994, 1995, and 1996. The proof of claim failed to include a claim for $4,179.82 in water charges although the amount for tax year 1995 did include $94.40 for a "water lien." The proof of claim also failed to make any provision for postpetition interest on the real estate taxes or water charges for the period after May 1996.

The parties do not dispute that the Town's claim for real estate taxes was secured by a lien pursuant to Massachusetts law, Mass. Gen. Laws ch. 60 § 37, and the Property had been subject to a taking in accordance with state statutes, Mass. Gen. Laws ch. 60 §§ 53 and 61. The Town's claim for water charges also was secured pursuant to state law. Mass. Gen. Laws ch. 40 § 42A–42D.[10] The

---

**10.** It appears that under Massachusetts law the Town would have had a lien by operation of law for the water charges upon their non-

payment. Mass. Gen. Laws ch. 40 § 42A (providing that if water charges are not paid by their due date, a lien arises for the charges,

Debtor's plan provided for payment of the Town's claim as filed, and the confirmation order provided that $17,226.02 [11] in total payments would be paid to the Town over a sixty month period on account of its secured claim.

In Chapter 13, an allowed secured claim is entitled to certain treatment. 11 U.S.C. § 1325(a)(5). In general, a claim is deemed allowed if a proof of claim is filed and no party in interest objects to it. 11 U.S.C. § 502(a). Section 506(a) of the Bankruptcy Code governs whether any portion of a creditor's claim should be treated as a secured claim. *Winthrop Old Farm Nurseries, Inc. v. New Bedford Institution for Savs. (In re Winthrop Old Farm Nurseries, Inc.)*, 50 F.3d 72, 73 (1st Cir.1995). Section 506(b) prescribes that postpetition interest, fees, and costs may be added as part of an allowed secured claim to the extent that such a claim is oversecured. *See In re Busone*, 71 B.R. 201, 203 (Bankr.E.D.N.Y. 1987). Section 506(b) permits the holder of a nonconsensual oversecured claim, e.g., a claim arising by operation of law such as a statutory lien for real estate taxes or for water charges, to postpetition interest on its claim. *In re DeMaggio*, 175 B.R. 144, 147 (Bankr.D.N.H.1994).

In Chapter 13, a plan's treatment of an allowed secured claim can be confirmed if one of three conditions is satisfied: (1) the secured creditor accepts the plan; (2) the debtor surrenders the property securing the claim to the creditor; or (3) the debtor invokes the so-called "cramdown" power. *Key Bank of New York v. Harko (In re Harko)*, 211 B.R. 116, 118 (2d Cir. BAP 1997); *see also Universal Am. Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 829 (11th Cir.2003). Under the cramdown option of § 1325(a)(5), the debtor is permitted to keep the property over the objection of the creditor, the creditor is allowed to retain its lien securing the claim, and the debtor is required to provide the creditor with full payment of the allowed secured claim as well as present value in the form of postpetition interest. *Harko*, 211 B.R. at 118; *Busone*, 71 B.R. at 203; 4 Keith M. Lundin, *Chapter 13 Bankruptcy, 3d Edition* at 300–2 (2000 & Supp.2004).

Although the Town held an allowed secured claim, the Debtor's plan failed to satisfy any of the three options for treatment of an allowed secured claim. The Debtor's plan treated the Town's allowed secured claim as a priority unsecured claim. Accordingly, the Debtor's plan failed to provide for the payment of postpetition interest on the Town's secured claim for the period beyond May 15, 1996.[12] Thus, the plan failed to provide present value in the form of postpetition

---

interest thereon, and costs relative thereto); Mass. Gen. Laws ch. 40 § 42B (indicating that the lien takes effect by operation of law on the day immediately following the due date of the water charge and continues until the charge has been added to or committed as a tax under Mass. Gen. Laws ch. 40 § 42C and, if not added to or committed as a tax, then the lien terminates on October first of the third year following the year in which the charge became due). Upon certification by the board or officer in charge of the Town's water department, or the tax collector, the Town's assessor should have added such wa-

ter charges to the tax on the Property and such charges would have been collectible as part of the real estate taxes on the Property. Mass. Gen. Laws ch. 40 §§ 42C and 42D.

**11.** As previously noted, there is a four cent discrepancy between the proof of claim amount and the plan and confirmation order amounts.

**12.** The Debtor's plan provided for the payment of postpetition interest through May 15, 1996, only because the Town included interest in its proof of claim.

interest as required by § 1325(a)(5). The Town did not object to its treatment under the Debtor's plan, and the bankruptcy court confirmed that plan. The Town did not appeal the confirmation order. Accordingly, the confirmation order is *res judicata* and binding on the Debtor and the Town in accordance with § 1327 of the Bankruptcy Code. *See Andersen v. UNI-PAC–NEBHELP (In re Andersen)*, 179 F.3d 1253 (10th Cir.1999) (holding that an order confirming a Chapter 13 plan, which provided that confirmation would constitute a finding that payment of the debtor's student loans beyond that provided for by the plan would impose an undue hardship, was *res judicata* as to the issue of whether full payment of the debtor's student loans would constitute an undue hardship and, therefore, the balance of the debtor's student loan debt was discharged pursuant to the terms of the confirmed plan); *Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370 (1st Cir. BAP 2001) (holding that the plan confirmation process, which resulted in confirmation of the debtor's plan only after notice and an opportunity for the creditor to be heard, effectively extinguished the debtor's liability to the creditor under principles of *res judicata* even though the creditor filed its proof of secured claim before the claims filing bar date); *Doral Mortgage Corp. v. Echevarria (In re Echevarria)*, 212 B.R. 185 (1st Cir. BAP 1997) (holding that a creditor who waited for the completion of plan payments before asserting a claim for postpetition interest did not have an *in rem* interest claim against the debtor because the creditor never objected to its treatment under the plan and, therefore, it lost any right it had to collect interest), *aff'd*, 141 F.3d 1149 (1st Cir.1998); *In re Ayre*, 339 B.R. 684 (Bankr.C.D.Ill.2006) (holding that the provisions of the debtors' confirmed plan were *res judicata* and binding on the taxing authority as it had notice of the plan and the debtors' proposed treatment of its disputed claim); *cf. Bateman*, 331 F.3d at 830–31 (holding that, although the parties were bound by the terms of the plan as confirmed, which plan conflicted with the mandatory provisions of the Bankruptcy Code, the creditor's secured claim for arrearages survived the plan and the creditor retained its rights under the mortgage until the creditor's claim was satisfied in full); *Internal Revenue Service v. Cousins (In re Cousins)*, 209 F.3d 38 (1st Cir.2000) (holding that Chapter 12 debtors remained liable for postpetition interest on non-dischargeable prepetition tax debts as the debtors' discharge under § 1228(a) did not discharge their personal liability for the postpetition interest).

### III. Effect of the Final Confirmation Order

At issue is the impact of the final confirmation order on the Debtor and the Town, i.e., which obligations of the Debtor have been discharged. The Town admits it is barred by the Debtor's discharge from collecting the amounts due prior to the filing of the bankruptcy petition from the Debtor personally and from the Debtor's interest in the Property. Prior to the Debtor paying the outstanding obligations against the Property in March 2006, the Town apparently was willing to limit its collection efforts to whatever rights it had against the co-owners of the Property, to whose interests the Debtor succeeded postpetition, as of the date the Debtor filed for bankruptcy.

▮▮▮ The Town argued below, and the bankruptcy court agreed, that the Town could collect postpetition interest on the prepetition real estate taxes and could maintain its prepetition statutory lien securing such obligation because the Property was co-owned during the Debtor's bankruptcy and the Debtor's bankruptcy could

not have affected the Town's rights to collect vis-a-vis these co-owners. *See Wiremen's Credit Union, Inc. v. Laska (In re Laska)*, 20 B.R. 675, 677 (Bankr. N.D.Ohio 1982) (observing that a creditor's failure to object to the manner of repayment set forth in a debtor's Chapter 13 plan does not mean that the creditor has impliedly agreed to forego any rights it may have against the co-debtors during the pendency of the plan). Under Massachusetts law, however, there is no authority for the assessment of real estate taxes upon the undivided interest of joint tenants or tenants in common. *Curtiss v. Inhabitants of Sheffield*, 213 Mass. 239, 100 N.E. 365, 367 (1913). Rather, a real estate tax lien affects a whole parcel of land and not just the interest of one tenant. *Id.* Because under Massachusetts law there was only one real estate tax lien on the Property, the Debtor's completion of her plan effectively discharged that one real estate tax lien, covering prepetition real estate taxes and water charges, against her interest in the property, pursuant to the terms of the Bankruptcy Code. Otherwise, the Debtor would be denied the benefit of the completion of her confirmed Chapter 13 plan, her bankruptcy discharge, and her fresh start. The fact that the discharge of the Town's lien on the Debtor's interest in the Property would effectively discharge that lien as to all owners of the Property—the Debtor, Picariello, and Turner—cannot prevent the Debtor from obtaining the benefit of completion of her Chapter 13 plan. While the Town might argue that the loss of their lien, as to the non-debtor co-owners, is harsh and unfair, such a result is mandated by Massachusetts' unitary lien law as set forth in *Curtiss v. Sheffield.*

■ The Panel notes further that the Town could have protected itself from this result by filing a proof of claim containing all elements of its claim, i.e., postpetition interest on the prepetition real estate tax-

es, the prepetition water charge, and the postpetition interest on the water charge, which obligations the Bankruptcy Code would have required the Debtor to pay in full through her Chapter 13 plan. Because the Town's proof of claim omitted a claim for these items, such items were not part of its allowed claim under § 502(a) and were discharged pursuant to § 1328(a). Accordingly, upon completion of the Debtor's plan payments and receipt of her Chapter 13 discharge, the Debtor had neither an *in personam* nor an *in rem* obligation to pay any prepetition claim beyond the amount in the Town's allowed claim. The Debtor's obligations for real estate taxes and water charges for 1993 through 1996, along with any postpetition interest on those obligations, have been satisfied by the Debtor's completion of the confirmed Chapter 13 plan.

■ The allowance of the Town's secured claim for prepetition real estate taxes and water claims was *res judicata* on the amount of its claim. *See In re Bernard*, 189 B.R. 1017 (Bankr.N.D.Ga.1996) (concluding that confirmation implicitly determines the issue of claims allowance as a matter of *res judicata* ). The failure of the Town to object to the improper treatment of its allowed secured claim in the Debtor's plan prior to confirmation or to appeal the confirmation order is binding on the Town. While the treatment of the Town's claim was wrong, the interest in the finality of confirmation orders in bankruptcy proceedings is stronger than the bankruptcy court's obligation to verify a plan's compliance with the Bankruptcy Code. *Andersen*, 179 F.3d at 1258. The failure of the Town to object to its treatment under the plan or to appeal the final confirmation order results in the loss of its right to collect postpetition interest. *Doral*, 212 B.R. at 188.

■ The Debtor had requested that the bankruptcy court order the Town to

prepare an accounting to determine whether the Town misapplied postpetition payments made to it, whether by the Chapter 13 trustee, the Debtor, or her co-owners, which request the bankruptcy court denied when it denied the Debtor's motion for summary judgment. It appears from the record that the Town applied the Debtor's plan payments to post-petition interest that was accruing on the prepetition taxes as well as the 1997 taxes and *not* to the prepetition taxes themselves. If applied in this manner, the Town contravened the terms of the Debtor's confirmed plan and the Bankruptcy Code, which require that a cure of the prepetition arrearage to the Town restore the Debtor to her pre-default status. *See In re Wines,* 239 B.R. 703, 707 (Bankr. D.N.J.1999) (explaining that the debtors' payments on the prepetition mortgage arrearage under their confirmed plan should be treated separately from the debtors' regular monthly mortgage payments outside the plan); *In re Rathe,* 114 B.R. 253, 257 (Bankr.D.Idaho 1990) ("Payments made during the pending of the Chapter 13 plan should have been applied by [the mortgagee] to the current payments due and owing with the arrearage amounts to be applied to the back payments."). Because the Debtor's prepetition obligations and related postpetition interest obligations have been discharged as to her and because the bankruptcy court has no jurisdiction to determine whether the co-owner's obligations for such charges under state law were satisfied, the Panel will not order the bankruptcy court to require such an accounting.

In her complaint and her motion for summary judgment, the Debtor requested that the bankruptcy court find that the Town willfully violated the discharge injunction of § 524(a)(2) of the Bankruptcy Code, and she requested damages for such violation. Because the bankruptcy court must develop a record on these issues in the first instance, this proceeding must be remanded to the bankruptcy court for consideration of the Debtor's request for sanctions.

### CONCLUSION

For the reasons stated, we conclude that the bankruptcy court erred in denying the Debtor's motion for summary judgment and granting the Town's cross-motion. Accordingly, the order of the bankruptcy court granting summary judgment for the Town is hereby **VACATED** and the order of the bankruptcy court denying summary judgment for the Debtor is hereby **VACATED.** This case is **REMANDED** to the bankruptcy court for entry of orders granting summary judgment for the Debtor and denying summary judgment for the Town and for further proceedings consistent with this opinion.