In re the NEUSTETER REALTY
COMPANY, et al., Debtors.

The NEUSTETER REALTY COMPANY,
Neusteter Downtown Corporation, and
Stetco, Inc., Appellants,

v.

HOLZMAN–DEMUTH
NOTEHOLDERS, Appellees.

Civ. A. No. 87–M–0058.
Bankruptcy Nos. 85–B–07034 M to
85–B–07036 M.

United States District Court,
D. Colorado.

June 23, 1987.

Stephen Seifert, Carolyn C. Fuller, Fairfield & Woods, Denver, Colo., for appellants.

Michael J. Guyerson, Rothgerber, Appel, Powers & Johnson, Denver, Colo., for appellees.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This is an appeal from a judgment awarding $85,473.02 on a secured claim in a Chapter 11 bankruptcy proceeding over the debtors' objections. The dispute arises from the sale of property which was subject to a deed of trust to secure promissory notes held by creditors who are identified as the Holzman–Demuth Noteholders, appellees ("noteholders").

The appellants stopped making the required monthly payments on the notes in August of 1985. On November 8, 1985 the noteholders sent a letter to the appellants, notifying them of the default in the payment of the October and November installments and declaring the following:

Under the provisions of the foregoing promissory notes, if this default remains uncured for ten days, *we have the right under the notes to accelerate* the maturity on all the principal and interest due under the notes and to declare such principal and interest immediately due and payable. Accordingly, unless the default on all the notes listed above are [sic] cured within the next ten days, *I hereby give you notice that we intend to accelerate* and pursue appropriate legal remedies.

Record on Appeal, Vol. I, p. 201 (emphasis added).

The debtors made no payments and filed their voluntary bankruptcy petitions on the tenth day, November 18, 1985.

The issues raised on appeal have been briefed adequately and the decisional process would not be significantly aided by oral argument. Accordingly, oral argument is not needed under Bankruptcy Rule 8012.

## *I. Did the Bankruptcy Judge Err in Awarding Interest at the Maturity Rate Based on the Acceleration of the Debt?*

The notes provided for a 10% rate of interest until maturity when a default rate of 18% became applicable. The bankruptcy judge found and concluded that the November 8, 1985 letter "was sufficient for both purposes of declaring a default and acceleration of the indebtedness." Findings Of Fact, Record On Appeal, Vol. I, p. 259. The effect was to award the noteholders $70,511.21 as the difference in interest rates to the time of the sale of the property when the disputed amounts were placed in escrow.

The appellants contend that this letter did not accelerate the debt because (1) the notes provided for separate notices and (2) a separate notice is required under the common law of Colorado.. In support of the first assertion, the appellants rely on the following language in the notes:

Maturity of all principal and interest due hereunder *may be* accelerated and such principal and interest declared immediately due and payable, at the option of the holder of this note (i) upon the occurrence of a default in the payment of an installment due hereunder which remains uncured after ten (10) days notice

. . .

Appellants brief, p. 4 (emphasis added in brief; quoting Record On Appeal, Vol. I, p. 170).

This language does not support the argument. The parties did not agree to a requirement of a second notice if the intent to accelerate is made clear in the notice of default. The election to accelerate was made known to the debtors in the letter of November 8, 1985.

The deed of trust, which the appellants also signed, explicitly provides that upon default the noteholders "may, without notice or demand, declare all of the Secured Obligations immediately due and payable in

full." Record On Appeal, Vol. I, p. 192. That language is entirely consistent with the conclusion that no separate notice of the election to accelerate was required.

The appellants also argue that well established common law in other states requires a separate notice of acceleration after notice of default and expiration of the time to cure the default. The terms of the note declare that Colorado law will govern all disputes arising under it (Record On Appeal, Vol. I, p. 171). The appellants urge the law of other jurisdictions on the claim that no Colorado court has decided the question under similar circumstances.

■ The appellants ignore *Hendron v. Bolander*, 101 Colo. 414, 74 P.2d 706 (1937). In response to the debtor's contention that notice must be given before an acceleration option may be exercised, the Supreme Court of Colorado held that "[t]he holder of ... a note need not give the makers notice of his election to accelerate the maturity upon default unless there is some provision in the note therefore, of which the note here is devoid." *Id.* at 708. The case is dispositive on the question of whether Colorado law requires two distinct notices to effect acceleration regardless of the terms of the note.

The cases cited by the appellants give the following rationale for requiring two separate notices:

> Notice of intent to accelerate is necessary in order to provide the debtor an opportunity to cure his default prior to the harsh consequences of acceleration and foreclosure. Proper notice that the debt has been accelerated ... cuts off the debtor's right to cure his default and gives notice that the entire debt is due and payable.

*Ogden v. Gibraltar Savings Assoc.*, 640 S.W.2d 232, 234 (S.Ct.Tex.1982).

■ In the present case the appellants received a clear notice warning them of the "harsh consequences of acceleration" should their default remain uncured for ten days. By the terms of the notes and deed of trust the appellants were aware that a second notice was not required to accomplish the actual acceleration. That aware-

ness is shown by the fact that the bankruptcy petitions were filed on the tenth day after receipt of the notice.

Furthermore, the requirement of a second notice is an equitable principle and in this case the equities lie, not with the appellants, but with the appellees. Rather than responding with the payment of the delinquent installments, the debtors blocked foreclosure of the deed of trust by obtaining the protection of the Bankruptcy Code.

The appellants have also argued that after they filed their petitions the automatic stay provision of Section 362 of the Bankruptcy Code, 11 U.S.C. § 362, prevented the noteholders from later taking any actions which would effect acceleration. They state in their reply brief that:

> "[t]he Debtors agree that, were acceleration under the notes automatic, Section 362 would not serve to stay that acceleration. Here, however, a notice of acceleration was required. The giving of that notice was stayed by Section 362, and the Noteholders made no effort to obtain relief from the stay in order to give the requisite notice."

Appellants' Reply Brief, p. 4.

■ Because neither Colorado law nor the terms of the agreement between the parties required a second notice, the acceleration *did* occur automatically at the end of the ten day period. The appellants' contention is irrelevant. Section 362 had no effect on the acceleration of the debts in question because no further affirmative acts which could be stayed were required to cause that acceleration. At the end of the ten day period given to the debtors to cure their defaults, the full indebtedness became due and payable.

This is in accord with the holding of *In the Matter of LHD Realty Corp.*, 726 F.2d 327 (7th Cir.1984), where the court interpreted the automatic stay provision of Section 362 in light of the "deacceleration and cure" provisions of Section 1124 of the Bankruptcy Code, 11 U.S.C. § 1124. The court stated that:

> we think that, although section 362 stays foreclosure, it need not be read to pre-

clude acceleration. Instead, at least in a Chapter 11 proceeding, acceleration appears to be a conditional right of the lender subject to being undone by the cure provisions of sections 1123(a)(5)(G) and 1124. Section 1124(2) of the Bankruptcy Code expressly recognizes that a debtor pursuant to a Chapter 11 plan may reverse the acceleration of an obligation caused by his default.

*Id.* at 332.

After quoting the relevant portions of Section 1124, the court concluded that:

> Since section 1124 recognizes the authority to "deaccelerate" a mortgage, and since section 1124(2)(A) refers in this context to defaults (and presumably accelerations) occurring *after* commencement of the case under Chapter 11, the implication is that a lender can accelerate a loan notwithstanding section 362, subject to its action being reversed pursuant to section 1124.

*Id.* (emphasis in original).

The debtors made no effort to proceed under section 1124.

## II. Did the Bankruptcy Judge Err in Awarding Late Payment Charges?

■ The second issue appealed by the debtors in this case is whether the late payment charges provided for in the notes and awarded by the bankruptcy judge are allowable under Section 506(b) of the Bankruptcy Code, which states that:

> To the extent that an allowed secured creditor is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and *any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.*

11 U.S.C. § 506(b) (emphasis added).

The notes at issue in this case state that "[m]aker agrees to pay a late charge of four percent (4%) of any payment due hereunder ... which is not paid within fifteen (15) days from the due date thereof, to cover the additional expense incident to the handling and processing of past due payments." Record On Appeal, Vol. I, p. 171.

These late charges are allowed by Section 506(b) so long as they are "reasonable." There is no dispute that the notes were secured by property worth more than the debt owed. In fact, the total debt owing on the date the property was sold was approximately $1.6 million, whereas the property was sold for more than $4.6 million dollars. Record On Appeal, Vol. I, p. 141 (Stipulation of Facts).

Nevertheless, the appellants dispute whether late charges are, in fact, allowed under Section 506(b), despite the plain wording of the statute. In support of this argument the appellants point to the legislative history of Section 506(b). The Senate report accompanying the section states that it "codifies current law by entitling a creditor with an oversecured claim to any reasonable fees, costs, or charges." S.Rep. No. 95–989, 95th Cong., 2d, Sess. 68, *reprinted in* 1978 U.S.Code Cong. & Ad. News at 5787, 5854. The appellants cite this language and then point to a pre-Code case interpreting the 1898 Bankruptcy Act which held that late payment charges were not allowed since they tended to act as a penalty against the estate, ultimately harming the unsecured creditors. *In re Tastyeast, Inc.,* 126 F.2d 879 (3d Cir.1941), cert. den. 316 U.S. 696.

In response to this argument the noteholders cite *Mack Financial Corp. v. Ireson,* 789 F.2d 1083 (4th Cir.1986), affirming the award of late charges which were 5% of the overdue installments. There, too, the debtors argued that the legislative history concerning the codification of "current law" should make these late charges unrecoverable. In response the court stated that:

> we do not think this general language controls the present case. Congress' apparent understanding of the pre-Code law was that creditors were entitled to reasonable charges. Nothing in this brief statement suggests that Congress was aware of, and meant to adopt, all the various exemptions to the general rule, such as a prohibition of charges for late

payment. Instead, we think the unambiguous language Congress chose must prevail over this cursory legislative statement.

*Id.* at 1084.

The Seventh Circuit has also determined that late charges provided for in a note are recoverable under Section 506(b), *In the Matter of LHD Realty Corp.,* 726 F.2d 327, 333 (7th Cir.1984).

In light of the fact that Section 506(b) allows reasonable charges, and the terms of the notes and deed of trust provide for the late charges in question, the bankruptcy judge did not err in awarding them.

*III. Did the Bankruptcy Judge Err in Awarding the Full Amount of Attorney's Fees Requested By Appellees?*

█ The final issue appealed by the debtors in this case is the award of the full amount of attorney's fees requested by the appellants pursuant to Section 506(b) of the Bankruptcy Code, which, as previously noted, allows the recovery of reasonable attorney's fees in cases where the creditor applying for them is oversecured.

The appellants first contend that the bankruptcy judge applied the wrong standard when he awarded the fees. They claim that the judge merely applied his own standard (that the fees were reasonable so long as the creditors willingly paid them) rather than the standards which the Tenth Circuit has declared should apply in evaluating attorney's fees in bankruptcy cases.

A careful analysis of the transcript of the hearing before the bankruptcy judge confirms that he did, in fact, base his decision to award attorney's fees on the fact that the noteholders had willingly paid them. Transcript of Hearing, Record On Appeal, Vol. II, pp. 12, 53.

This standard fails to meet the requirements for evaluating the reasonableness of attorney's fees in bankruptcy cases as set forth in *In the Matter of Permian Anchor Services, Inc.,* 649 F.2d 763 (10th Cir.1981). In *Matter of Permian,* the court stated that "reasonable attorney's fees are to be based upon an evidentiary inquiry which meets generally the guidelines set forth in

the case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)." *Matter of Permian,* 649 F.2d at 768. The *Johnson* case cited by the Tenth Circuit lists twelve factors which are to be considered when determining the reasonableness of a fee request.

While the Tenth Circuit declared that the analysis need only "generally" meet the guidelines set forth in *Johnson,* the bankruptcy judge's findings in this case are not adequate. He never made reference to *Matter of Permian,* nor did he state that he was considering any of the factors listed in *Johnson.* Instead, he relied primarily, if not exclusively, on his own standard: whether the client willingly paid the bills or not. In doing so the judge erred, and this case must thus be remanded for an evidentiary hearing on the reasonableness of the fees of both of the noteholder's law firms, consistent with the criteria set forth in *Johnson* and adopted in the bankruptcy context by the Tenth Circuit in *Matter of Permian.*

The bankruptcy judge did not make adequate findings of fact on this issue as required by Bankruptcy Rule 7052, incorporating 52 F.R.Civ.P. The appellees attempt to support the fees awards by reference to casual comments made by the bankruptcy judge during the course of the hearing. Moreover, the evidentiary record presented to the bankruptcy judge was insufficient to support the awards made. There is a significant lack of documentation for the amount requested by Jones, Day. In fact, only 5.5 hours of time appear on the billing statements submitted by that firm. At the stated hourly rate for the attorney in question, $165.00, this would amount to, at most, $907.50. Nevertheless, the bankruptcy judge awarded the full request of $2,999.59 in fees and costs.

In summary, it is this court's conclusion that, under the terms of the agreement between the parties, no notice was required to accelerate the full indebtedness of the notes. All that was required was notice that the debts were in default. This was given by the letter of November 8, 1985, which also gave the debtors a ten day

grace period within which to cure the default. At the end of this ten day period the notes were automatically accelerated. Thus, the conclusion of the bankruptcy judge that the default rate of interest applied to the full outstanding debt from November 19, 1985 until the notes were paid off in June of 1986, is affirmed.

It is this court's further conclusion that the bankruptcy judge was correct in awarding the late payment charges, as provided for in the notes, for the three months in which the Appellants failed to make their required monthly payments. Thus, the conclusion of the judge on this issue is also affirmed.

Finally, it is this court's conclusion that the bankruptcy judge erred in awarding the full attorney's fees requests of the Appellees on the basis of incomplete documentation, an incorrect legal standard, and insufficient findings of fact.

Accordingly, it is ORDERED that the judgment entered January 6, 1987 is AFFIRMED in part and REVERSED in part and this matter REMANDED for further proceedings consistent with this opinion and order.

J. Bruce Terchman, Denver, Colo., for debtor.

Michael J. Guerson, Denver, Colo., for Travelers Ins. Co.

Barbara A. Shangraw, Denver, Colo., for Federal Deposit Ins. Corp.

Dahil Goss, Denver, Colo., for other creditor.