**In re Orville J. RATHE and Janet A. Rathe, Husband and Wife, Debtors.**

**Bankruptcy No. 85–02570–13.**

United States Bankruptcy Court, D. Idaho.

May 4, 1990.

Brent T. Robinson, Ling, Nielsen and Robinson, Rupert, Idaho, for debtors.

Stephen A. Bradbury, Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, Idaho, for Union Federal Sav. and Loan Ass'n.

## MEMORANDUM OF DECISION

ALFRED C. HAGAN, Chief Judge.

On November 6, 1989, an order was entered in this Chapter 13 case approving the standing trustee's final accounting and discharging the trustee. The debtors now move for injunctive relief against Union Federal Savings and Loan Association, which motion raises issues relating to the effect of a Chapter 13 discharge on a secured creditor holding a security interest in a debtor's principal residence under the provisions of 11 U.S.C. § 1322(b)(2) and the method of the lenders application of the debtors' principal and interest payments during the term of the plan.

### FACTS

The debtors filed their Chapter 13 petition on December 11, 1985. The debtors submitted an amended Chapter 13 plan on April 7, 1986, which plan was confirmed on April 28, 1986. The confirmed plan provided Rainier Mortgage Company, predecessor in interest to Union Federal Savings and Loan Association and the holder of the security interest in debtors' principal residence, would be paid regular monthly contract payments of $390.00 during the term of the plan and debtors would continue to make such payments upon completion of the plan. In addition, the amount of default to be cured during the term of the plan was listed as $7,668.41, which amount was to be paid in monthly installments of $213.01.

Rainier Mortgage Company did not object to the treatment of its claim in the Chapter 13 plan. The plan was confirmed on April 28, 1986. On January 30, 1987, Union Federal filed a motion to modify the Section 362 stay, but did not appear at the hearing and consequently the motion was considered denied.

Upon completion of the plan by the debtors Union Federal objected to the Chapter 13 trustee's final accounting claiming it was owed additional monies and that debtors' payments were not current at the time the plan was completed. After hearing on the objection, a memorandum of decision was issued on November 2, 1989 concluding the debtors had paid Union Federal in accordance with the plan provisions. Findings were made to the effect the debtors' plan provided for payment to Union Federal of $14,040.00, representing 13 monthly payments of $390.00 each, the contract monthly payment, and $7,668.41 for arrearages. The trustee's final accounting indicated these amounts had been paid. As the additional claimed fees, costs and late charges were not included in the plan or

were determined to be not necessary or reasonable charges, the objection to the final accounting was denied.

Now after completion of the plan and the entry of debtors' discharge, Union Federal is demanding from the debtors these payments and other payments it claims debtors owe pursuant to the contract which occurred during the term of the execution of the plan. Union Federal claims debtors are not current in their principal and income payments, even though the debtors made these payments during the plan and made up the arrearages, since Union Federal partially diverted these payments to reserve or impound accounts, late charges, professional fees and other charges. The debtors claim Union Federal has not made proper application of debtors' payments and question Union Federal's accounting procedures. These issues are thus raised through the debtors' application for a specific injunction against Union Federal prohibiting it from further collection activities.

## DISCUSSION

The debtors' plan provisions for treatment of the Union Federal claim complied with 11 U.S.C. § 1322(b)(2) and (5),[1] the plan was completed and the final accounting of the trustee approved. Consequently, the issues must be resolved under the chapter 13 discharge provisions. The applicable discharge provisions are contained in Section 1328(a)(1).[2] Section 1328(a)(1) excepts from discharge the debt owed on a debtor's principal residence, since the debt extends beyond the term limitations al-

lowed for a chapter 13 plan. A debtor is allowed to cure any arrearage during the term of the plan and is required to maintain the contract payments during the term of the plan. The issues in the instant case arise in the nature of contract charges, other than principal and interest, provision for which is included in the debtors' contractual obligation to Federal Union and which are included in almost all residential security documents, and the creditor's application of the debtors' principal and interest payments to those charges.

## PRE–PETITION CHARGES

■ The terms and conditions of the debtors' confirmed plan as to any pre-petition claim of Union Federal are binding on Union Federal by the terms of Section 1327(a).[3] Any objection the creditor had to any of the terms of the Chapter 13 plan should have been made prior to confirmation. Thus any claim for monies due prior to confirmation, and any claim for arrearages not provided for in the plan are included in the discharge under Section 1328(a)(1). All payments were made by debtors pursuant to the terms of the plan and there was no objection by Union Federal to those terms.

## POST PETITION CHARGES

Union Federal argues it is entitled to recover its post-petition charges by diverting plan principal and interest payments to these charges under the combined provisions of Sections 506(b)[4] and 1322(b)(2),

---

**1.** 11 U.S.C. § 1322(b)(2), (5):
... the plan may—

    .    .    .    .    .

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims or leave unaffected the rights of holders of any class of claims;

    .    .    .    .    .

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

**2.** 11 U.S.C. § 1328(a)(1):
... the court shall grant the debtor a discharge of all debts ... except any debt—
(1) provided for under Section 1322(b)(5) of this title; ...

**3.** 11 U.S.C. § 1327(a) states:
Effect of confirmation—The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

**4.** 11 U.S.C. § 506(b) states:
To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this sec-

claiming it is an oversecured creditor and debtors cannot modify the contract for the purchase of their principal residence. The respective categories of contract charges will be each considered according to these contentions.

■ As to the claim of Union Federal for post petition fees incurred in conjunction with the motion for stay relief, the post confirmation motion of Union Federal for stay relief was essentially nothing more than a collateral attack on the confirmation of the debtors' Chapter 13 plan. The motion was apparently abandoned by Union Federal. At a minimum any expenses incurred in the motion to lift stay were unnecessary and should not be charged to the debtor.

■ The memorandum of decision of November 2, 1989 also decided the issue of post petition attorneys' fees and costs in the amount of $440.19, foreclosure fees and costs of $513.96 and an appraisal fee of $150.00 along with late charges of $836.04 as non-allowable charges. The basis of such denial is a finding the fees were not reasonably and necessarily incurred by Union Federal in pursuing collection of its claim during the term of the Chapter 13 plan. Previous findings entered in this case to the effect Union Federal is not entitled to charge debtors account for these items are ratified.

■ However, the issue of the diversion of the debtors' principal and interest payments to late charges, and impound, or reserve accounts, deserves further comment and analysis. Union Federal claims entitlement to late charges since the trustee did not make payments on the date the payments were due pursuant to the loan agreement. Union Federal alleges it is entitled to these late charges as part of its claim. Thus, Union Federal contends the late charges are provided for in the contract and Union Federal is entitled to apply

debtors' principal and interest payments to these charges.

Late charges are an allowable item for recovery by an over-secured creditor under Section 506(b).[5] However, court approval for the payment of interest, fees, costs or charges "provided for under the agreement" must be obtained under the provisions of Section 506(b). Union Federal had not sought, from the time of the filing of the debtors' petition until the time of the trustee's final accounting, to recover any § 506(b) fees. The issue cannot be now raised as the plan is completed, the trustee's final accounting approved, and the debtors have been granted their discharge.

Union Federal further contends it is entitled to the late charges (and its other contract charges) under the "non-modification" provisions of 11 U.S.C. § 1322(b)(2).

Assuming the basic contract between the debtor borrowers and the creditor lender provided for late penalties or interest, the same are allowable inclusions in the creditors secured claim, but only if the basic contract so provides. Interest on the arrearages covered by the chapter 13 plan is not allowable under Section 1322(b)(2) and (b)(5) absent the basic contractual provision.[6]

But in the instant case, Union Federal made no such claim during the life of the chapter 13 process for late charges either through the claim process, objecting to confirmation, as an administrative expense, or otherwise.

The "impound" or "reserve" charges arise as a result of the debtors' contract obligation to make regular payments to the lender in order for the lender to maintain reserve accounts sufficient to pay the debtors' real property taxes and insurance premiums. Apparently, the debtors' real property taxes or insurance premiums increased during the term of the debtors' Chapter 13 plan and the reserve account was insuffi-

tion, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

5. *In re Neusteter Realty Co.,* 79 B.R. 30 (D.Colo. 1987); *In the Matter of LHD Realty Corp.,* 726 F.2d 327, 333 (7th Cir.1984).

6. *In re Terry,* 780 F.2d 894 (11th Cir.1985); *In re Kooker,* 106 B.R. 233 (Bankr.D.Nev.1989).

cient to make these payments. The only instance in which the problem should arise in a Chapter 13 case is in the event of an increase in a debtor's tax obligation, or an increase in insurance premiums paid by the lender, during the term of the plan.

Section 1322(b)(2) prevents modification of the basic contract provisions for principal and interest payments, and such contractual provisions as "impound" or "reserve" charges would properly fall into the category of administrative expenses under Section 503. Again, Union Federal made no attempt to collect these charges during the chapter process. A lender cannot arbitrarily direct principal, interest or arrearage payments under a confirmed chapter 13 plan to reserve account deficits accruing prior to plan completion without court authorization for the recoupment of such administrative expenses during the plan process.

### THE ACCOUNTING PROCEDURE

■ Union Federal's accounting procedure applied payments to the earliest payments due and not to the payments due and owing during the pendency of the plan. The purpose of a Chapter 13 plan is to allow a debtor to pay arrearages during the pendency of the plan while continuing to make payments at the contract rate. Payments made during the pendency of the Chapter 13 plan should have been applied by Union Federal to the current payments due and owing with the arrearage amounts to be applied to the back payments. Union Federal cannot utilize its accounting procedures to contravene the terms of a confirmed Chapter 13 plan and the Bankruptcy Code.

### CONCLUSION

Union Federal's attempts to collect the sums it contends are due and owing are in contravention of the debtors' Chapter 13 plan and the Bankruptcy Code. The record indicates the debtors' plan was performed according to its terms, terms by which United Federal is bound. Any costs and fees incurred prior to the termination of the debtors' Chapter 13 plan and any non-payment of those costs and fees is a result of either Union Federal's conduct or failure to act, or the payment time schedule of the trustee, and not as a result of any fault on the part of the debtors.

The debtors have requested this Court issue an amended order of discharge to include a provision enjoining Union Federal from attempting to collect these monies. The discharge provisions of 11 U.S.C. § 1328 operate:

"as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [debt discharged under Section 1328] as a personal liability of the debtor ..." [7]

Thus, upon successful completion of a chapter 13 plan, the chapter 13 discharge granted in 11 U.S.C. § 1328 operates, pursuant to 11 U.S.C. § 524, as a general injunction.

■ Based on the foregoing, I find the debtors are current in plan payments to the mortgage holder as of the date of completion of the plan including any principal, interest, fees, and reserve accounts. Accordingly, a specific injunction will issue prohibiting Union Federal from attempting to collect from the debtors any sums other than the amounts due under the terms of its contract with the debtors accruing after November 6, 1989, the date of the order approving the final accounting, discharging the trustee and closing the estate, including any fees resulting from this motion and any other post discharge motion and exceptions the taxes increase.

Counsel for the debtors may prepare the injunctive order.

---

**7.** 11 U.S.C. § 524(a)(2); *In re Gilliam,* 67 B.R. 83 (Bankr.M.D.Tenn.1986).