**In re Charles W. & Sandy WINES, Jr., Debtors.**

**Bankruptcy No. 97–38861(RTL).**

United States Bankruptcy Court, D. New Jersey.

July 30, 1999.

Timothy P. Neumann, Broege, Neumann, Fischer & Shaver, Manasquan, NJ, for Debtors.

Rhondi Lynn Schwartz, Shapiro & Kreisman, Marlton, NJ, for Fleet Mortgage Group, Inc.

## OPINION

RAYMOND T. LYONS, Bankruptcy Judge.

The debtors moved for an order determining the balance due to Fleet Mortgage Group, Inc. ("Fleet") which held a first mortgage on the debtors' residence. Pursuant to court authorization, the debtors sold their residence to their daughter and tendered to Fleet the amount the debtors contend was the correct amount due on the mortgage, $108,590.02. Fleet asserted that the debtors were short approximately $21,000. After discussions between the parties, Fleet amended its calculations and showed a shortfall of $17,615.39. The parties were unable to reconcile their accounts and have asked the court to determine the amount due to Fleet based upon the written submissions by both parties. After analyzing the documents the court finds that neither party has correctly computed the amount due. As set forth in detail below, the court finds that the amount due

to Fleet, after payment of the lump sum from the proceeds of sale, is $15,427.93 principal plus interest at 10.125% per year from April 1, 1999 until payment is made.

The court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984 referring all bankruptcy cases to the bankruptcy court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) concerning the allowance of claims.

## FACTS

Charles W. Wines, Jr. and Sandy Lee Wines borrowed $115,400.00 from Fleet's predecessor on April 23, 1986 and agreed to repay the loan with interest at 10.125% per year in 360 monthly payments of $1,023.40 commencing June 1, 1986. The loan was secured by a first mortgage on their residence 802 Route 71, Spring Lake Heights, New Jersey. After paying the loan monthly for ten years, Mr. and Mrs. Wines fell behind on their payments in 1996 and Fleet initiated foreclosure proceedings in state court. A final judgment of foreclosure was entered on May 29, 1997 and a sheriff's sale was scheduled for August 11, 1997.

The debtors filed a petition under chapter 13 of the Bankruptcy Code on August 6, 1997. In their chapter 13 plan, the debtors proposed to cure the arrears on the first mortgage held by Fleet by monthly payments over the sixty month term of the plan and to remain current on payments due post petition outside the plan. The debtors estimated that the amount necessary to cure the default to Fleet was $22,353. They proposed monthly payments of $372.53 under the plan and promptly commenced payments to the standing chapter 13 trustee. The debtors also resumed payments of principal, interest and escrows for taxes and insurance to Fleet outside the plan in accordance with the loan documents.

Fleet filed a proof of claim asserting a secured claim of $105,412.42 [1] and arrears of $33,882.16. Attached to the proof of claim was a breakdown of the arrears showing the loan was "due for" the installment payment scheduled for April 1, 1996, thus the debtors were seventeen monthly payments behind plus late charges. In addition, Fleet calculated interest at 10.125% [2] on the arrears for the sixty month term of the plan and added costs and attorneys fees. A copy of the proof of claim with rider is attached as Exhibit A. Debtors did not object to the proof of claim.

Because the arrearage to Fleet was larger than anticipated, the debtors amended their plan to provide for sixty monthly payments to the trustee of $627.00. The plan was confirmed, without objection, on March 23, 1998. The debtors faithfully made all payments both inside and outside the plan directly to Fleet. Debtors made seventeen payments post petition outside the plan stopping after January 1997. The Debtors made eighteen payments under the plan to the Trustee totaling $9,794.44 stopping after the February 1999 payment. The trustee remitted a total of $9,348.37 to Fleet.

In April 1998 debtors' counsel requested a payoff figure from Fleet and received a statement showing $130,305.47 due at that time. Nothing was done at that time to satisfy the mortgage and, apparently, the debtors did not protest the amount claimed by Fleet even though it was higher than the amount on the proof of claim. Subsequently, in December 1998 Fleet provided another payoff statement and a breakdown thereof at debtors' request which showed the balance due had been reduced to $123,645.00. Again, the debtors did not protest this amount.

In early 1999, because interest rates had declined in the market, the debtors attempted to refinance their mortgage without success. Their daughter, however, was able to obtain a mortgage commitment and agreed to purchase the property for $145,000. After notice and an opportunity for a hearing were given to all creditors and parties in interest, the court approved the sale by the debtors of their residence to their daughter. For the first time, the debtors disclosed in their moving papers that they disputed the amount owed to Fleet; therefore, the order approving the sale permitted the sale free and clear of Fleet's mortgage provided the debtors paid the undisputed amount to Fleet and escrowed the balance claimed by Fleet pending the court's determination of the amount due. Immediately after the sale, counsel for the debtors paid $108,590.02 to Fleet on March 31, 1999.

Fleet's counsel wrote back stating that the balance due as of April 1, 1999 had grown to $125,877.12 due to the accrual of interest and payments from the escrow account. After deducting the $108,590.02 paid from the sale proceeds, Fleet claimed a balance due of $17,287.10. The debtors then filed this motion asking the court to fix the net amount due to Fleet. In fact, in their papers the debtors maintain that nothing further is due to Fleet. Even if there is a balance due to Fleet, debtors ask the court to offset that amount with an award of counsel fees and accounting fees to debtors because Fleet, according to the debtors, has been unwilling or unable to provide a detailed statement showing how it arrived at the payoff amount.

In their application the debtors alleged that Fleet's proof of claim showed a total amount due as of the petition date of $105,412.42. Since the debtors made seventeen payments post petition outside the

---

1. As discussed below, this amount was only the principal balance and did not included accrued interest, late charges, fees, expenses or escrow deficit.

2. Debtors have not challenged the use of the contract rate of interest on the arrears. In the absence of evidence from the debtors, the contract rate is presumed to be the market rate. *General Motors Acceptance Corp. v. Jones*, 999 F.2d 63, 70–71 (3d Cir.1993).

plan and eighteen payments to the standing chapter 13 trustee under the plan, most of which should have gone to Fleet, they could not understand how they could owe more at the time of sale than Fleet claimed as of the petition date. A certification of the debtors' accountant was filed together with her handwritten calculation showing how she arrived at the amount due on the mortgage at $108,570.02. At oral argument on the motion, the debtors could not indicate where the accountant had considered post petition interest in her calculations, so the court rejected her figures.

The debtors also attached a computer generated amortization schedule purporting to show how the original loan should have been paid down each month since inception in 1986. That amortization schedule is at variance with the one attached to Fleet's papers, and with one which the court generated from the court's software. The monthly interest is significantly lower, consequently the monthly principal amortization is significantly higher, than that produced by Fleet's computer and the court's computer. The court will use its own computer-generated amortization table in its determination.

In response to the motion, Fleet submitted an attorney's certification describing the history of providing payoff statements and a printout of Fleet's loan history purporting to detail how the payoff figure was derived. The court could not decipher the loan printout and directed each party to provide a detailed analysis of the payments and application thereof to both the arrears to be cured under the plan and the payments outside the plan. Each party did so, but neither accounting is satisfactory as far as the court is concerned. Fleet's counsel provided her handwritten spreadsheet showing receipt and application of payments. One glaring error is that some of the payments received outside the plan were applied to prepetition installments which were to be cured under the plan. Also, Fleet failed to recalculate the interest on arrears which had been projected over the sixty months of the plan in its proof of claim. Since the arrears were paid off early, interest should have accrued only through March 31, 1999, not for the full sixty months. Fleet, also, applied the post petition payments to the principal balance due as of April 1, 1996 rather than to the payments due starting on September 1, 1997. This would result in interest being charged twice on the principal included in the arrears, which is improper.

The debtors' accountant attempted to breakdown the application of payments inside and outside the plan but failed to properly treat the arrears and interest on arrears under the plan. Regarding payments outside the plan, debtors' accountant used a new amortization statement which is very close to that generated from the court's software but failed to attribute post petition payments outside the plan to the appropriate installments. The correct method is to apply the first payment post petition on September 1, 1997 to the installment due September 1, 1997 according to the amortization schedule established at the inception of the loan. The installments that were missed by the debtors' prepetition are accounted for in the payments due under the plan. Because neither the debtors nor Fleet has properly accounted for the payments made by the debtors both inside and outside the plan, the court has undertaken its own calculations based upon the information supplied by both parties.

### CONCLUSIONS OF LAW

The parties have cited no cases dealing with the proper application of payments to a secured creditor for arrears inside the plan and outside the plan. The court's research has revealed one case, *In re Rathe*, 114 B.R. 253 (Bankr.D.Idaho 1990), that is on point. There is very little commentary on the subject. In his treatise, Judge Lundin mentions the subject briefly. See Lundin, *Chapter 13 Bankruptcy* (Second Edition) § 4.55 at 4–111 (1994).

■ The Supreme Court has made clear that the arrears and the payments outside the plan must be treated separately. "As authorized by § 1322(b)(5), the plans essentially split each of respondent's secured claims into two separate claims—the underlying debt and the arrearages." *Rake v. Wade*, 508 U.S. 464, 473, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993).

The effect of Chapter 13 is to split the mortgage into two separate debts: a pre-petition debt and a post-petition debt. The pre-petition debt consists of those payments, advances, fees, and charges that came due prior to the filing of the bankruptcy petition; the post-petition debt is treated like a current mortgage and consists of those payments which come due after the bankruptcy petition is filed.

Berton J. Maley, *Saving Your Home Through Chapter 13 Bankruptcy: The Impact of Rake v. Wade*, 6 Loy. Consumer L. Rep. 83 (1994).

By curing the arrearage, the debtor should be restored to his pre-default status. As the legislative history to the Bankruptcy Reform Act of 1994 states, "[A] cure pursuant to a plan should operate to put the debtor in the same position as if the default had never occurred." 140 Cong. Rec. H10,770 (daily ed. Oct. 4, 1994)(statement of Rep. Brooks).

The bankruptcy court in Idaho discussed the proper application of payments inside and outside a chapter 13 plan.

[The lender's] accounting procedure applied payments to the earliest payments due and not to the payments due and owing during the pendency of the plan.

The purpose of a Chapter 13 plan is to allow a debtor to pay arrears during the pendency of the plan while continuing to make payments at the contract rate. Payments made during the pendency of the Chapter 13 plan should have been applied by [the lender] to the current payments due and owing with the arrearage amounts to be applied to the back payments. [The lender] cannot use its accounting procedures to contravene the terms of a confirmed Chapter 13 plan and the Bankruptcy Code.

*In re Rathe*, 114 B.R. at 257.

Analysis must begin with an amortization schedule for the loan on the original terms agreed between the debtors and Fleet's predecessor. Exhibit B is an amortization schedule for a loan in the principal amount of $115,400.00 with interest at 10.125% per year payable in 360 monthly installments of $1,023.39 [3] with the first payment due June 1, 1986. Turning to page three of the schedule, one sees that after the 118th payment due in March 1996, the principal balance due is $105,413.86. This is within $2 of the amount claimed by Fleet on its proof of claim of $105,412.42 which also shows that the debtors are due for payment from April 1, 1996.[4]

Next, one can see that as of August 6, 1997 when their petition was filed, debtors had missed seventeen monthly payments from number 119 through 135 inclusive. This also coincides with Fleet's proof of claim which includes arrears for seventeen monthly payments of principal, interest and escrows.[5] The first payment due out-

---

**3.** The loan documents call for monthly payments of $1,023.40—one cent higher than calculated by the court's software.

**4.** As mentioned above, Fleet's proof of claim was incorrect because it only reflected the principal in the total claim. Interest, expenses, fees, late charges and escrow deficits should have been included in the total claim as well as in the arrearage.

**5.** Debtors have not challenged the inclusion of monthly escrow payments within the ar-

rearage claim. Fleet should not be permitted a double recovery by including the monthly escrows in the arrearage claim and also seeking the escrow deficiency as part of its payoff calculations. If the debtors had paid all of the monthly escrows on time, there should have been no escrow deficiency. Thus, by satisfying the arrearage claim, the debtors have also cured any escrow deficiency.

side the plan would be for September 1, 1997 which is payment number 136 on the schedule. Crediting payments outside the plan to the installments due contemporaneously according to the original schedule is the only way to put the debtors in the same position as if default had never occurred.

**Inside the Plan.**

Fleet's proof of claim asserted that $33,-882.16 would be needed to cure the arrears over the sixty month life of the plan. That included interest of $6,687.62 over the sixty month period. See the attachment to Fleet's proof of claim.[6] That interest figure was arrived at in two steps. First add up:

| Seventeen monthly payments in arrears at $1,349.80 per month | $22,946.60 |
|---|---|
| Seventeen late charges of $40.93 each | 695.81 |
| Accrued late charges | 368.37 |
| Total | $24,010.78 |

This is the interest-bearing portion of the arrears.[7] Second, calculate the payments needed to pay that amount with interest over sixty months. Exhibit C attached hereto is an amortization schedule showing the monthly payments necessary to payoff the interest-bearing arrears of $24,010.78 over sixty months with interest at 10.125% per year. It shows that the total interest over the sixty months is $6,687.62, the exact amount used by Fleet in its proof of claim.

To determine the amount of arrears due when the lump sum payment was made on March 31, 1999, one must apply the payments received by Fleet from the standing chapter 13 trustee to the installments shown on this amortization schedule, Exhibit C. That will eliminate the unearned interest on arrears relating to the time after satisfaction of the arrears by the lump sum payment. The trustee's report shows he paid $9,348.37 to Fleet. Dividing $9,348.37 by $511.64 (the monthly payment under the amortization schedule, Exhibit C) yields eighteen payments, plus a surplus of $138.85. Referring to the schedule, after eighteen payments inside the plan, the balance on the interest-bearing arrears claim is $18,030.47. Deducting the surplus of $138.85 yields a net amount of the interest-bearing arrears of $17,891.62 as of February 1, 1999. Interest must be added from that date to March 31, 1999, the payoff date. To that must be added the non-interest-bearing amounts from the proof of claim. Thus, the net amount of the arrears claim as of March 31, 1999 is $21,318.57 computed as follows.

| Arrears as of February 1, 1999 | $17,891.62 |
|---|---|
| Interest at 10.125% per annum from 2/1/99 to 3/31/99 | 243.19 |
| Appraisal fee | 110.00 |
| Attorney's fees—bankruptcy | 250.00 |
| Prior foreclosure fee | 1,000.00 |
| Prior foreclosure costs | 1,823.76 |
| Total | $21,318.57 |

The lump sum payment should first be applied to satisfy the net arrears claim. Deducting $21,318.57 (the net arrears claim) from $108,590.02 (the lump sum payment), leaves a balance of $87,271.45 to be applied against the mortgage outside the plan.

**Outside the Plan.**

Debtors made seventeen payments to Fleet outside the plan beginning in September 1997 and ending in January 1999. Returning to Exhibit B hereto, the amortization schedule for the original loan shows that the payment due September 1, 1997 is number 136. The seventeen payments made by the debtors would go through number 152. After the 152nd payment in January 1999, the principal outstanding was $100,163.98. Adding interest at

---

**6.** Fleet is entitled to interest on arrears under *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). The 1994 amendments to the Bankruptcy Code which overrule *Rake v. Wade* do not apply to contracts entered into before October 22, 1994. 11 U.S.C. § 1322(e). The Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 702(b)(2)(D), 108 Stat. 4106, 4150–51 (1994).

**7.** Fleet could have charged interest on the fees and expenses included in its arrears, but chose not to. See *Rake v. Wade*, 508 U.S. at 475 n. 12, 113 S.Ct. 2187.

10.125% per year from January 1, 1999 through March 31, 1999 gives a total due outside the plan of $102,699.38. Applying the balance of the lump sum payment $87,-271.45 yields a shortfall of $15,427.93 as of March 31, 1999. Interest on that amount at 10.125% per year from April 1, 1999 through July 31, 1999 is $522.12. Thus, **the amount still due to Fleet as of July 31, 1999 is $15,950.05**. Per diem interest is $4.28.

**Late Charges.**

■ Debtors dispute Fleet's right to late charges citing *Metlife Capital Fin. Corp. v. Washington Ave. Associates, L.P.*, 313 N.J.Super. 525, 713 A.2d 527 (1998). The New Jersey Supreme Court recently reversed the Appellate Division and upheld a contractual provision for late charges in a commercial loan. 159 N.J. 484, 732 A.2d 493 (1999). Although that decision does not apply to residential mortgages, courts have traditionally allowed late charges according to the contract of the parties. *In re Harmon*, 72 B.R. 458, 461 (Bankr. E.D.Pa.1987); *In re LHD Realty Corp.*, 726 F.2d 327, 333 (7th Cir.1984); *Neusteter Realty Co. v. HolzmanDemuth Noteholders (In re Neusteter Realty Co.)*, 79 B.R. 30, 35 (D.Colo.1987) and *In re Rathe*, 114 B.R. at 256. *cf. In re Timberline Property Dev., Inc.*, 136 B.R. 382 (Bankr.D.N.J. 1992). Therefore, debtors' objection to the late charges in Fleet's proof of claim is overruled.

**Sanctions.**

■ Since Fleet failed to correctly account for the balance due on the mortgage, debtors ask the court to award them fees for their attorney and accountant for bringing this motion. That is like the pot calling the kettle black. The first certification filed by debtors' accountant contained a calculation of loan balance which was off by more than $15,000 by the court's reckoning. It also had an amortization schedule which was inconsistent with the one produced by Fleet, the one used by the court, and a later one used by the accountant herself in her second attempt to calculate the loan balance. Also, the debtors and their professionals failed to appreciate that once their chapter 13 plan was confirmed, they had two accounts to satisfy: the arrears according to Fleet's proof of claim and the amounts outside the plan. So the debtors' calculations were far from the mark. Fleet, also, failed to account for the loan in a comprehensible manner. The poor quality of the papers filed by Fleet to support its claim is a sad commentary on the record keeping of a large financial institution. Unfortunately, it is typical of the products generated by lenders and loan servicers in court proceedings. Nevertheless, Fleet was much closer to the court's calculations and there is no reason to impose sanctions on it.

### *CONCLUSION*

After the lump sum payment on March 31, 1999, the principal balance due to Fleet was $15,427.93. Interest from April 1, 1999 through July 31, 1999 is $522.12 making the total of principal and interest due as of July 31, 1999, $15,950.05. Interest accrues on the principal at 10.125% per annum, or $4.28 per day. The debtors' objection to late charges is overruled and the debtors' request for sanctions is denied.