In re Jorge **GUEVARA** and Anna Guevara, Debtors.

No. 95–10663–BKC–AJC.

United States Bankruptcy Court, S.D. Florida.

Feb. 1, 2001.

**60**

Michael A. Frank, Miami, FL, for Jorge and Anna Guevara.

Mitchell J. Nowack, Miami, FL, for HSBC Mortgage Corporation.

Nancy N. Herkert, Hialeah, FL, trustee.

---

### ORDER DETERMINING HSBC MORT-GAGE CORPORATION'S CLAIM FOR EXCESS ARREARAGE TO BE NON–DISCHARGEABLE

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE came before the Court for hearing initially on April 18, 2000 and then again on August 22, 2000 upon HSBC Mortgage Corporation's *Motion for Order Directing Trustee to Disburse Funds* filed March 22, 2000 (the "Motion") and upon *Debtor's Response to Motion for Order Directing Trustee to Disburse Funds* filed March 28, 2000. At the April 18, 2000 hearing, the Court granted the motion in part, directing the disbursement to HSBC Mortgage Corporation ("HSBC") of $17,165.70. In the order directing disbursement, the Court reserved ruling on the issue of entitlement to additional arrearage amounts charged to the Debtors by HSBC. The Court held a further hearing on July 18, 2000 and on August 22, 2000.

At the August 22, 2000 hearing, the parties stipulated to the pertinent facts.

### FACTS

The Debtors filed this Chapter 13 bankruptcy case on February 12, 1995. On May 24, 1995, the Court confirmed the Debtors' First Amended Chapter 13 Plan.

On December 4, 1996, the Debtors filed a Second Amended Chapter 13 Plan. The second amended plan provided for payments to HSBC, f/k/a Marine Midland, over a period of 49 months, through March 1999. The second amended plan proposed to cure the arrearage owed to HSBC for all months through October 1996, while also providing for the regular monthly mortgage payment, including 8% interest. The second amended plan was confirmed by order dated May 5, 1997.

The Debtors have paid to the Trustee all monies due under the second amended plan. However, post-petition, during the life of the Chapter 13 plan, the taxes and insurance on the property increased. HSBC paid the increased amounts for both the taxes and insurance and annually sent computerized escrow analysis letters to the Debtors identifying the increases. The Debtors did not pay the increased amounts, and HSBC made no attempt to collect the deficiencies during the pendency of the case, until the filing of the Motion.

The issue before this Court is whether HSBC is entitled to collect the increased amount of taxes and insurance which accumulated post-petition, from the date of the filing of the petition through March 1999, the date the Debtors completed their confirmed plan.

### DISCUSSION

▬ The Debtors rely on *In re Conway*, 126 B.R. 28 (Bankr.D.Del.1991) to support the position that the balance of HSBC's debt [for the payment of taxes

and insurance] be discharged. The Court does not believe HSBC's debt created by the payment of increased amounts of taxes and insurance should be discharged. Pursuant to 11 U.S.C. § 1328, "all debts provided for by the plan" are discharged. A debt is "provided for" when the plan contains some provision describing the treatment of that debt. *Conway,* 126 B.R. at 28 citing *In re Gregory,* 705 F.2d 1118, 1122 (9th Cir.1983). The plan did not provide for the payment of any increases of taxes or insurance. In this case, the monthly payment to HSBC under the plan represented the sum of principal and interest and a portion of the arrearage owed through October 1996. The monthly payment was sufficient to meet the Debtors' mortgage obligations at the time of confirmation, but there were no plan provisions anticipating increases in payments. Therefore, because there were indeed annual increases in the amount of taxes and insurance owed HSBC, and because the confirmed plan did not provide for the annual increases, the debt owed HSBC for payment of the increased amounts is not discharged under the plan.

The terms and conditions of the confirmed Chapter 13 plans are only binding on HSBC pursuant to 11 U.S.C. § 1327(a) to the extent they provided for HSBC's debt. At the time of confirmation, however, there was no debt owed for the yet-to-be increased amount of taxes and insurance; therefore, the plan did not provide for the payment of these increases. The debt for the payment of the increased amounts of taxes and insurance arose postpetition. Thus, the orders confirming the Chapter 13 plans are not *res judicata* as to the increased amounts sought, because these amounts were not at issue or in existence or even known at the time of confirmation and could not have been addressed or disposed of at the confirmation hearing.

Additionally, the Debtors have relied on *In re Rathe,* 114 B.R. 253 (Bankr.D.Idaho 1990) to support the position that HSBC not be repaid for its payment of the increased amount of taxes and insurance. In *Rathe,* the debtors' real property taxes or insurance premiums increased during the term of the Chapter 13 plan and the reserve account was insufficient to make the payments. 114 B.R. at 256. The *Rathe* court held that impound or reserve charges would properly fall into the category of administrative expenses under 11 U.S.C. § 503 and, because the creditor made no attempt to collect these charges during the bankruptcy case, the creditor could not recoup such payments after completion of the plan. 114 B.R. at 257. This Court does not agree with *Rathe.* If that is the law, then banks and mortgage companies would be discouraged from helping debtors save their homes by advancing tax and insurance increases and instead would be causing debtors additional legal expense for plan modifications or for seeking stay relief for non-payment of increases. All debtors benefit from a more benevolent approach by home mortgage lenders.

Charges for impound or reserve accounts arise from a debtor's contract obligation to make regular payments to the lender so the lender can maintain reserve accounts sufficient to pay the debtor's real property taxes and insurance premiums. Although the Debtors did not meet their contract obligations [by providing for the payment of the increased amounts of taxes and insurance], HSBC paid the Debtors' taxes and insurance and is now, pursuant to the terms of its contract, seeking repayment. The fact that HSBC is attempting collection of the annual shortfalls after completion of the Debtors' confirmed plan is of little significance. The terms of the mortgage provide for the payment of the annual shortfalls by the Debtors and 11 U.S.C. § 1322(b)(2) requires payment thereof pursuant to the mortgage provisions. Section 1322(b)(2) of the Bankruptcy Code prohibits modification of the basic contract provisions for payments to a creditor secured by the Debtors' principal residence. Therefore, the Debtors' liability

under the terms of their mortgage, which includes payment of all taxes and insurance, is unaffected by the Debtors' plans.

The Court is sympathetic to the fact that the Debtors cannot afford to pay the increased amounts all at one time, but the law cannot be circumvented. Perhaps the Debtors should have anticipated and provided for the increases in the plan or perhaps the plan should have been modified to provide for the repayment of the increases after notice was received by the Debtors. The Debtors did, in fact, have actual notice. In any event, section 1322(b)(2) requires payment pursuant to the terms of the mortgage and there are no exceptions that can relieve the Debtors of their liability.

It is

**ORDERED AND ADJUDGED as follows:**

1. All sums due and owing HSBC for the payment of annual taxes and insurance, through and including March 1999 are non-dischargeable.

2. The Debtor having paid the arrearage and regular monthly payments due to the mortgagee through March 1999, the mortgage of HSBC Mortgage Corporation is REINSTATED as of March 1999. All future mortgage payments shall be paid directly to HSBC Mortgage Corporation beginning March 1999.